115 N.J. Super. 528 (1971)
280 A.2d 248
NATIONAL SURETY COMPANY, A CORPORATION, PLAINTIFF,
v.
ALLSTATE INSURANCE COMPANY, A CORPORATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided July 23, 1971.
*529 Mr. Leonard Rosenstein for plaintiff (Messrs. Feuerstein, Sachs & Maitlin, attorneys).
Mr. John L. McDermott for defendant (Messrs. Gaffey, Webb & McDermott, attorneys).
ACKERMAN, J.S.C.
This action, tried by the court without a jury, involves the construction and interpretation of an exclusionary clause in a liability insurance policy which, surprisingly enough, has been the subject of very little direct consideration in the reported authorities in cases involving similar facts.
The proofs may be summarized as follows: T.I. McCormick Trucking Co., Inc. (McCormick) is engaged in the trucking business, carrying cargoes which consist principally of vegetable oils, chemicals, liquid sugar, and molasses. At all times pertinent it was the named insured in a comprehensive liability policy issued by Allstate Insurance Company and in a motor truck cargo policy (denominated *530 "named perils form") issued by a subsidiary of National Surety Company. National Sugar Refining Co. (National Sugar) of Philadelphia consigned two loads of liquid sugar to Pepsi Cola Bottling Co. (Pepsi) at Baltimore and contracted with McCormick to transport and deliver the same. McCormick furnished two tractors and two tank trailers for that purpose, together with a hose and pump for use in loading and unloading the sugar. Part of this equipment, including the hose and pump, had been used on the previous day by McCormick to deliver lard to another consignee. After the sugar had been unloaded at its plant, Pepsi claimed that it had been contaminated by a fatty substance, and it made claim against National Sugar to recoup the sum of $9,649.35 it had paid for the sugar. National Sugar paid that sum to Pepsi and then instituted suit in the Superior Court against McCormick, claiming that the sugar had been contaminated by lard, either during the course of carriage or during loading or unloading, because of McCormick's negligence in failing to clean its equipment. McCormick thereupon called upon Allstate to defend the suit against it and to pay any loss, but Allstate declined to do so, claiming that coverage was excluded under the terms of its policy. National Surety then stepped in to defend the action and eventually effected a settlement before trial, paying the sum of $3,500 to National Sugar. It took an assignment from McCormick of its rights against Allstate and instituted this suit against Allstate to recover the cost of the investigation and legal defense it had provided to McCormick in the Superior Court action and to recover the amount of the settlement paid to National Sugar.
Allstate has pleaded and relied upon a number of defenses, but the principal one is that the policy which it issued excluded coverage. I find that this defense is a valid one and it is dispositive of the controversy.
The comprehensive liability policy issued by Allstate provided three basic coverages, denominated in the declarations in the policy as "A. Bodily Injury Liability." "B. Property *531 Damage Liability  Automobile," and "C. Property Damage Liability  Except Automobile." In the insuring agreements, Coverage B and Coverage C were described as follows:
Allstate Insurance Company * * *

* * * * * * * *
Agrees with the insured, named in the declarations made a part hereof, in consideration of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

INSURING AGREEMENTS
I. * * *
Coverage B  Property Damage Liability  Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile.
Coverage C  Property Damage Liability  Except Automobile: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.
The term "automobile," as defined in the policy, clearly included the tractors and trailers used by McCormick to carry the liquid sugar and, in addition, the policy expressly provided that "use of an automobile includes the loading and unloading thereof." The policy also provided that Allstate agreed, with respect to such insurance afforded by the policy, to defend any suit against the insured even if such suit were groundless, false or fraudulent. It is therefore conceded that if the suit by National Sugar against McCormick had stated a claim within the coverage afforded by the policy, Allstate would have been obliged to afford a defense. It is also agreed by the parties that coverage, if any, under the policy would come under Coverage B, since the contamination, if caused by McCormick, of necessity occurred during actual carriage or during the process of loading or unloading, and therefore arose out of the ownership, maintenance or use of an automobile as defined in the policy. See Cenno *532 v. W. Virginia Paper & Pulp Co., 109 N.J. Super. 41 (App. Div. 1970), certif. den. 56 N.J. 99 (1970); Drew Chem. Corp. v. Amer. Fore Loyalty Group, etc., 90 N.J. Super. 582 (App. Div. 1966); Annotation, "Risks within `loading and unloading' clause of motor vehicle liability insurance policy," 95 A.L.R. 2d 1122 (1964).
National Surety, relying on the above authorities and the express provision of the policy that use of an automobile includes the loading-unloading process and arguing that the policy should be liberally construed in favor of coverage, claims that there is no doubt that the Allstate policy covvered the operation out of which the loss allegedly occurred. The argument is sound enough so far as it goes, but it completely ignores the effect of the exclusions to the policy. There are 11 exclusionary clauses, grouped under the heading "Exclusions," which followed immediately after the coverage clauses contained under the heading "Insurance Agreements." The exclusion relied upon by Allstate, the proper construction of which goes to the heart of this lawsuit, provides among other things that the policy does not apply, under Coverage B, to damage to property "transported" by the insured. It reads as follows:
This policy shall not apply:

* * * * * * * *
(h) Under Coverage B, to injury or destruction of property owned or transported by the insured, or property rented to or in charge of the insured other than a residence or private garage injured or destroyed by a private passenger automobile covered by this policy; * * *.
There was also an exclusion which specifically excluded from Coverage C any property in the "care, custody or control" of the insured, or over which it for any purpose was "exercising physical control." The text of that exclusion is that the policy does not apply:
(j) Under Coverage C, to injury to or destruction of (1) property owned or occupied by or rented to the insured, or (2) * * * property *533 used by the insured, or (3) * * * property in the care, custody or control of the insured or property as to which the insured for any purpose is exercising physical control, or (4) any goods, products, or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the accident arises; * * *.
The precise question is, what is the meaning of property "owned or transported" by the insured or "in charge of" insured, within the meaning of exclusion (h).
In construing a liability policy of this kind, one starts out with certain well settled guidelines for construction laid down by our Supreme Court. Exclusionary clauses are strictly construed against the insurance company and the trial court is enjoined, among other things, to consider whether there are judicial precedents which give a broader meaning to the language used in the policy than that contended for by the insurer. The rule is stated in Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur, 35 N.J. 1 (1961), as follows:
Solution of a problem of construction of an insurance policy must be approached with a well settled doctrine in mind. If the controlling language will support two meanings, one favorable to the insurer, and the other favorable to the insured, the interpretation sustaining coverage must be applied. Courts are bound to protect the insured to the full extent that any fair interpretation will allow. Kievit v. Loyal Protective Life Ins. Co., etc., 34 N.J. 475 (1961). Moreover, in evaluating the insurer's claim as to the meaning of the language under study, courts necessarily consider whether alternative or more precise language, if used, would have put the matter beyond reasonable question; also whether judicial decisions appear in the reports attributing a more comprehensive significance to it than that contended for by the insurer. Mahon v. American Cas. Co. of Reading, Pennsylvania, 65 N.J. Super. 148 (App. Div. 1961). Insurance contracts are unipartite in character. They are prepared by the company's experts, men learned in the law of insurance who serve its interest in exercising their draftmanship art. The result of their effort is given to the insured in printed form upon the payment of his premium. The circumstances long ago fathered the principle that doubts as to the existence of coverage must be resolved in favor of the insured. Barker v. Iowa Mut. Ins. Co., 241 N.C. 397, 85 S.E.2d 305 (Sup. Ct. 1955).
*534 These general rules of construction have spawned a number of subsidiary ones of equally universal recognition. For example, where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied. Cal-Farm Ins. Co. v. Boisseranc, 151 Cal. App.2d 775, 312 P.2d 401, 405 (D.C. App. 1957). [at 7-8]
See also Ohio Cas. Ins. Co. v. Flanagin, 44 N.J. 504, 513-514 (1965).
It is also the rule that when members of the public purchase policies of insurance, they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They are not to be subjected to technical encumbrances or hidden pitfalls, and their policies are to be construed liberally to the end that coverage is afforded to the full extent that any fair interpretation will allow. Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482 (1961); Gerhardt v. Continental Ins. Cos., 48 N.J. 291 (1966).
It is, nevertheless, well settled that an insurance policy is not ambiguous simply because it is complex and difficult to read. Liability policies are of necessity frequently complicated, and the wide variety of risks and hazards which may be covered or excluded has led to the development of a policy form which consists of a basic document which is modified and tailored by exclusions and endorsements to limit or enlarge the scope of coverage to conform to precise underwriting requirements. See Bryan Const. Co. v. Employers' Surplus Lines Ins. Co., 110 N.J. Super. 181 (Ch. Div. 1970). Exclusions which are clear and unambiguous will be enforced, and rules of liberal construction do not authorize a perversion of language or the exercise of inventive powers to create ambiguities where they do not fairly exist. James v. Federal Insurance Co., 5 N.J. 21, 24 (1950); Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511, 524 (1963); see Boswell v. Travelers Indemnity Co., 38 *535 N.J. Super. 599, 604 et seq. (App. Div. 1956); see American Legion, etc., Hospital v. St. Paul Fire & Marine Ins. Co., 106 N.J. Super. 393, 397 (App. Div. 1969).
What is the result here when these rules of construction are applied?
In the first place, on the facts of this case the language of exclusion (h), without resorting to precise dictionary definitions or judicial precedents construing it, seems clear and unambiguous and it does not serve to unfairly deprive the insured of coverage which it might reasonably have thought it had. Coverage is excluded of property "owned or transported" by the insured or property "in charge of" the insured. Even the ordinary owner of an automobile knows the difference between automobile liability insurance and collision insurance, and is aware of the fact that normally a liability policy does not cover damage to his own car or property. If he wants collision insurance to cover damage to property owned by him, he knows he must pay an additional premium for it, and he cannot assert that he had a reasonable expectation that, simply because he had a liability policy, he had coverage for his own property. The exclusion of property "owned" is therefore not ambiguous here and McCormick, which is not an unsophisticated owner of a pleasure car but is a business corporation engaged in transporting cargo for hire by motor vehicle, could certainly not claim that it had any doubt about the fact that its own tractors and trailers were not covered.
The same applies to property "transported" by the insured. It is true that, as stated in Cindrich v. Fireman's Fund Ins. Co., 6 Ariz. App. 371, 432 P.2d 919, 920 (Ct. App. 1967), where a similar exclusion was held not ambiguous, "There are no words, with the possible exception of mathematical terms, which are not ambiguous when applied to particular fact situations. The word `red' becomes ambiguous when applied to some shades." Although in some contexts the exclusion of property "transported" by the insured may be ambiguous and unclear of meaning, that is *536 not so here, and the ordinary layman would have no difficulty in concluding that one engaged in the business of carrying cargo for hire is "transporting" that cargo. Moreover, the ordinary carrier of cargo for hire knows that sizeable and repeated risks of damage to such cargo occur when it is carried, and that, if his liability for damage to that cargo is to be covered, he must get cargo insurance and not simply rely on ordinary comprehensive liability or automobile liability policies for coverage. Indeed, McCormick did have a separate cargo policy, and although National Surety claimed that, because of its terms, the cargo policy did not cover the loss, that circumstance does not bear upon the construction of the Allstate policy.
The same also applies to the meaning of property "in charge of" the insured. Although, as applied to some fact situations, the words may be of doubtful meaning, to the ordinary layman one is "in charge of" personal property when he has possession of it, has the right to exercise dominion and control over it, and is actually exercising physical control over it. One engaged in carrying or transporting cargo in a vehicle is certainly "in charge of" said cargo within the plain meaning of the words.
The ordinary meaning of the words used in the exclusionary clause, therefore, does not give rise to doubts as to its application in this case to exclude coverage.
This construction is not changed when, in accordance with the test laid down in Mazzilli, supra, resort is had to reported judicial decisions to ascertain whether they limit the exclusionary clause to a meaning less broad than that contended for by the insurer. One would expect that there would be an abundance of authorities dealing with the meaning of "transported" as used in an exclusion in a liability policy, but there are no New Jersey cases construing such exclusion, and the attorneys for the parties advised that they had been unable to find any reported cases precisely in point dealing with damage to cargo which involved interpretation of the words "transported" or "in charge of" *537 in such an exclusion clause. However, although few in number, there are such cases in other jurisdictions and there are additional decisions close to the point, including dicta in New Jersey cases, which make it clear that, on the facts of this case, the clause will be given its plain meaning and exclude coverage.
Directly in point with respect to the proper construction of "transported" is Travelers Ins. Co. v. Wright, 309 Ky. 158, 216 S.W.2d 909 (Ct. App. 1949). There a truckload of cream being carried for the owner by a trucker was destroyed in an accident due to the negligence of the trucker. It was held that the cream was property being "transported" by the trucker within the meaning of an exclusion in the trucker's automobile liability policy which provided that it did not apply to "injury or destruction of property owned by, rented to, in charge of or transported by the insured." A similar result was reached in the recent case of Lakatos v. Prudence Mut. Cas. Co., 113 Ill. App.2d 310, 252 N.E.2d 123 (Ct. App. 1969), stated by the court to be a case of first impression in Illinois. There it was held that personal property of others being carried in a passenger vehicle of the insured constituted property being "transported" by the insured within the meaning of an exclusion in an automobile policy exactly like exclusion (h) here involved. The court held that the language of the clause was clear and unambiguous and that the words should be given their ordinary meaning.
There are also several cases directly in point which bear upon the meaning of property "in charge of" the insured in an exclusionary clause, as it applies to property of others being carried or conveyed by the insured in or by a motor vehicle. In Aetna Cas. & Sur. Co. v. Patton, 247 Ky. 370, 57 S.W.2d 32 (Ct. App. 1933), it was held that a load of tobacco belonging to others being conveyed in a truck of the insured, who was engaged in the tobacco warehouse business, was property in the custody of the insured and that liability for damage thereof was excluded by the clause in *538 the insured's liability policy which provided that it did not apply to "property of the assured or property in the custody of assured * * * or property carried in or upon any automobile of the assured." In Clark Motor Co. v. United Pacific Ins. Co., 172 Or. 145, 139 P.2d 570 (Sup. Ct. 1943), a disabled vehicle was being towed by a wrecker owned by an insured engaged in the business of operating a public garage. While the insured was towing the car on a highway it was negligently overturned and damaged. It was held that the damage to the car was not covered by the insured's liability policy because of an exclusion clause which provided that the policy did not apply to "property owned by, rented to, in charge of, or transported by the insured." The insurance company had disclaimed liability on the ground that the damaged car was in charge of and being transported by the insured. The court held:
If we were to look only to the "Insuring Agreements" of the policy, there would be no doubt as to coverage as the automobile "wrecker" at the time of the accident was being used in connection with the operation of the business in which the insured was engaged. However, in construing the policy, we cannot exclude, from consideration the plain and unambiguous language of the exclusion clause. There may be some question as to whether the towing of the car was "transportation" within the meaning of the policy, but we think there can be no doubt that at the time Hallock's car was damaged it was "in charge of" the assured and therefore not covered by the policy. [139 p.2d at 572; citations omitted]
The same result was reached in State Farm Mutual Auto. Ins. Co. v. Dorough, 277 Ala. 662, 174 So.2d 303 (Sup. Ct. 1965). There a boat and trailer belonging to others were being towed by the insured's truck when an accident occurred due to the insured's negligence. It was held that liability was excluded by a clause in the insured's policy identical to exclusion (h) here involved. The court ruled:
We feel that while the boat and trailer were thus attached to the truck the boat and trailer were "in charge of" the driver of the *539 insured vehicle and therefore the insured would come within the exclusion of this policy. [Citations omitted.]
Having determined that the situation in the case at bar falls within the exclusion of the liability policy above discussed, under coverage B, it results that it is unnecessary for a decision in this case to determine whether the boat and trailer were "transported by the insured." [174 So.2d at 305]
Other decisions are helpful. See the following cases which deal with the meaning of property "transported" by or "in charge of" insured: Arditi v. Massachusetts Bonding & Ins. Co., 315 S.W. 2d 736, 742 (Mo. Sup. Ct. 1958); Hine v. American Mutual Liability Ins. Co., 20 Conn. Sup. 455, 139 A.2d 500 (C.P. 1958); cf. Fish v. Nationwide Mutual Ins. Co., 126 Vt. 487, 236 A.2d 648 (Sup. Ct. 1967). The following cases bear upon the meaning of property "in charge of" insured: Cohen & Powell, Inc. v. Great American Indemnity Co., 127 Conn. 257, 16 A. 2d 354 (Sup. Ct. Err. 1940); National Union Ins. Co. of Pittsburgh, Pa. v. Inland Crude, Inc., 433 F.2d 584 (10 Cir.1970); Moore v. M.F.A. Mutual Insurance Co., 422 S.W.2d 357 (Mo. Ct. App. 1967); State Automobile Mut. Ins. Co. v. Connable-Joest, Inc., 174 Tenn. 377, 125 S.W.2d 490 (Sup. Ct. 1939). See also 13 Couch, Insurance 2d §§ 45:946, 45:949 (1965); 7 Appleman, Insurance Law and Practice, § 4328 (1942) and 1970 pocket part; Annotation, "Scope of provision of automobile liability insurance policy excluding liability for damage to property in charge of insured, or variation of such provision," 10 A.L.R. 3d 515 (1966). The latter annotation summarizes the "in charge of" cases as follows:
In cases where the courts apply the "in charge of" exclusion and uphold the position of the insurance company in denying coverage, the common factor seems to be that the person responsible for the damage to the property was using the property with the permission of the owner, and had some right or authority to exercise dominion or control over the property. It is also to be noted that these courts apparently find that the language of the exclusion is plain and unambiguous, although this is not spelled out in all of the decisions, and apply the exclusion in the normal and usual sense of the language to the particular facts of the case. [at 516]
*540 Also in point are cases construing clauses in liability policies excluding coverage for damage to property in the "care, custody or control" of the insured, or property over which the insured is "exercising physical control." This language appears in the Allstate policy as exclusion (j), limiting Coverage C quoted above. Although it may be ambiguous in some situations, it has been held in cases involving personal property, and specifically in the few cases dealing with damage to cargo being carried, that the language is clear and unambiguous and has the same meaning in such cases as property "transported" or "in charge of" the insured.
Thus in Brunson v. Iowa Home Mutual Cas. Co., 224 F. Supp. 592 (S.D. Ala. 1963), a stevedoring company, which was the insured in a comprehensive general - automobile liability policy, entered into a contract with a chemical company to unload sulphur from barges owned by another and to transport the sulphur by truck to the chemical company's plant. A barge sank because of the negligence of the stevedoring company and it was sued by the owner of the barge for damage to the barge and by the chemical company for the loss of the sulphur. It was held that the stevedoring company had care, custody and control of both the barge and the sulphur while it was in the process of discharging the same and that its liability was excluded by a "care, custody and control" clause, numbered exclusion (j), which was identical to exclusion (j) in the policy here involved. The court concluded:
The Barge SC 1515 and its cargo were in the care, custody or control of [the stevedoring company], and therefore the loss or damage to same was excluded from coverage under the policy by exclusion j. [at 594; citations omitted.]
See also Madden v. Vitamilk Dairy, Inc., 59 Wash.2d 237, 367 P.2d 127 (Sup. Ct. 1961); Employers Mutual Liability Ins. Co. of Wisconsin v. Puryear Wood Products Co., 247 Art. 673, 447 S.W.2d 139 (Sup. Ct. 1969); General Ins. Co. *541 of America v. Camden Const. Co., 115 Ga. App. 189, 154 S.E. 2d 26 (Ct. App. 1967); Western Casualty & Surety Co. v. J.R. Adams, Inc., 465 P.2d 794 (Okl. Ct. App. 1970); S. Birch & Sons Construction Co. v. United Pacific Ins. Co., 52 Wash.2d 350, 324 P.2d 1073 (Sup. Ct. 1958), and Cindrich v. Fireman's Fund Ins. Co., supra, construing "care, custody and control" clauses in somewhat analogous cases.
Also directly pertinent, and clearly pointing the way to the proper result here, is the Appellate Division decision in Boswell v. Travelers Indemnity Co., 38 N.J. Super. 599 (1956), cited above. There the court had before it for construction a "care, custody or control" exclusion in a manufacturer's and contractor's liability policy issued to an insured who was engaged in the business of installing and repairing steam boilers. The question was whether the clause excluded liability for damage to heat exchange units attached to the boiler in the basement of a customer's office building upon which the insured was performing repairs. The court, noting that there were no New Jersey cases construing the phrase "care, custody or control," held that the words were "inherently ambiguous, for they are words of art which have been the focus of considerable judicial construction" (38 N.J. Super. at 607), and concluded that the customer, as owner of the real estate, rather than the insured, had care, custody or control of the damaged units within the meaning of the policy. However, the court cited and distinguished decisions dealing with automobiles and chattels "in charge of" insured, including the Clark Motor Co. and Connable-Joest, Inc. cases cited above, saying:
* * * None of those cases support defendant's position under the facts of this case, because in those situations the chattel was clearly within the "care, custody and control" or "in charge of" the insured. * * *
We have an entirely different case here. The heat exchange unit under repair was firmly attached to this owner's realty, and was functionally a part thereof. [at 608, emphasis supplied]
*542 There are many decisions which are in accord with the direct holding in the Boswell case. See Annotation, "Scope of clause excluding from contractor's or similar liability policy damage to property in care, custody or control of insured," 62 A.L.R.2d 1242 (1958) and supplements. However, the dictum is clearly in harmony with the other decisions cited above dealing with the construction of exclusionary clauses in cases involving damage to cargo and chattels. See also Elcar Mobile Homes, Inc. v. D.K. Baxter, Inc., 66 N.J. Super. 478, 488 (App. Div. 1961); Condenser Service, etc., Co. v. American, etc., Ins. Co., 58 N.J. Super. 179, 185 (App. Div. 1959), certif. den. 31 N.J. 548 (1960); Schneider v. New Amsterdam Cas. Co., 22 N.J. Super. 238 (App. Div. 1952).
The reported authorities, therefore, do not limit the plain meaning of exclusion (h) but, on the contrary, support its effectiveness here to exclude coverage, both on the ground that the liquid sugar was being "transported" by the insured and on the ground that it was property "in charge of" the insured.[1]
Since it is the ruling of the court that the language used in the exclusion is clear and unambiguous as applied to the facts of this case, there is no reason for inquiry here, applying the further test suggested in Mazzilli, supra, whether alternative or more precise language, if used, would have put the matter beyond reasonable doubt. However, it may be noted that the language of exclusion (h), excluding damage to property "transported" by insured or "in charge of" insured, has been used for many years in standard liability policies of various kinds without substantial changes in wording. Risjord and Austin, Automobile Liability Insurance Cases, Standard Provisions and Appendix 8, 25, 39, 61, 93, 125, 159, *543 189, 222, 239 (1964), and 1970 pocket part 265. As is apparent from the paucity of direct authorities, there has been relatively little litigation in personal property cases with respect to the exclusion and almost none with respect to the meaning of property "transported" by the insured. A fair inference to be drawn therefrom is that litigation has been unnecessary because the meaning of the exclusion is clear and that the format of such policies, including the exclusion, has caused little difficulty either to the general public or to insurance companies. It is questionable whether, with respect to matters here involved, a much clearer or more serviceable policy could have been drawn. As stated in Ramsey, "The Care, Custody, Control Exclusion of Liability Insurance Policies", July 1958, Insur. Counsel J. 288:
The acceptance, and consequently the success, of an insurance policy is not determined by the amount of litigation involving its construction, but rather lack of litigation. The lack of litigation ordinarily indicates understanding. The same may be said of a clause in a policy. * * *
There has been less disagreement and, hence, less litigation, concerning the meaning of the "care, custody, control" exclusion than many other provisions of liability insurance policies. * * *
All standard third-party liability insurance policies issued in this country today exclude injury to or destruction of property owned by, rented to, leased to, in charge of, or transported by the insured, or occupied or used by the insured, or property in the care, custody or control of the insured. The phraseology varies with each type of insurance contract, the variation conforming to the needs of a particular line of insurance. For example, the Family Automobile Policy excludes "injury to or destruction of property owned or transported by the insured, or property rented to or in charge of the insured." The substance of this provision in different policies is the same. And it is generally referred to as the "care, custody, or control" exclusion.
The reason for this exclusion is to provide liability insurance at a reasonable rate. The insured desiring the elimination of this clause can do so for an additional premium, or even better, procure the additional type of insurance policy needed. Actually, the type of coverage needed, with the exclusion in the policy, may run the gauntlet from a blanket automobile physical damage policy to cargo, to a builder's risk, to some type of floater policy. In reality, losses under this exclusion are business risks which should *544 be borne by management. Hence, it is more practical to exclude such blanket property damage coverage and to afford it under separate policies, each type of policy depending on the business or occupation of the insured. In that way, the overall premium cost is kept to a minimum.
See also Cooke, "Care, Custody or Control Exclusions," 432 Insur. L.J. 7 (Jan. 1959); Gowan, "Provisions of Automobile and Liability Insurance Contracts", Jan. 1963, Insur. Counsel J. 96, 103.
The policy therefore passes muster when the tests of Mazzilli are applied and the exclusion is enforceable. Defendant is entitled to judgment with costs.
NOTES
[1] Although it is conceded that Coverage B and exclusion (h) are applicable here, even if Coverage C and exclusion (j) were deemed applicable, the Brunson, Boswell and other cases construing the "care, custody or control" clauses cited above would require a construction of exclusion (j) to exclude coverage.