BANKS, Justice,
for the Court:
Here we are asked to hold that a policy exclusion specifying that the policy would not provide liability coverage for “injury to or destruction of property ... rented to or in charge of the insured ...” applies only if the insured is actually driving the car. We apply the plain language of the exclusion and affirm the grant of summary judgment in favor of the insurer where the insured’s sister accidentally collided with a company car, which the insured had driven and parked at her own house.
I
Misty Steadman initiated this action by filing a complaint against Mississippi Farm Bureau Casualty Insurance Company seeking relief on two grounds. Her underlying claim was that Farm Bureau had breached its automobile insurance contract with her by failing to pay on a claim which she contended her insurance policy covered. She also claimed that Farm Bureau had exhibited bad faith in failing to pay her claim and that, consequently, she was entitled to punitive damages. Upon a motion by the Defense, the Scott County Circuit Court granted Defendant Farm Bureau a summary judgment on both claims. The court found that the policy exclusion upon which Farm Bureau had based its denial of coverage was valid and applicable to the factual circumstances of Steadman’s complaint. Consequently, the court also found that Farm Bureau had a legitimate and arguable reason for denying coverage and had not acted in bad faith. Mrs. Steadman filed a timely notice of appeal.
II
The parties have stipulated to the facts as they appear in Farm Bureau’s brief in support of its motion for “summary judgment or alternatively for partial summary judgment.”
*589 Farm Bureau issued an automobile insurance policy to James Steadman as its named insured which provided coverage for one vehicle, a 1987 Oldsmobile Cutlass. The incident that gave rise to this lawsuit was an automobile accident that occurred on Saturday afternoon, August 6, 1988, at the Stead-man home in Scott County. At the time of the accident, Misty Steadman was employed as Director of Development and Customer Relations by Capital Services Corporation in Jackson, Mississippi. As Director of Development and Customer Relation, Steadman’s primary job duties were to call on existing customers throughout Mississippi and Louisiana and to sell security services to new customers in these areas. This required her to travel out of town an average of four days a week and spend the night away from her home two to three nights a week. Capital Services had available for use by its employees a pool of approximately thirty (30) company vehicles with the majority of these vehicles being passenger cars. Appellant used a company car to perform her duties between 50% and 75% of the time. In 1988, Appellant used her personal car a minimum of three or four times to perform her job duties. She regularly took a company car home with her overnight during the weekdays and weekends.
The week prior to the accident, Steadman had been in Baton Rouge on company business. She had driven to Baton Rouge in a Capital Services company car, a 1988 Delta 88 Oldsmobile. She returned from Baton Rouge on Friday evening, August 5, 1988, and was scheduled to be in Tupelo Monday morning on company business. Instead of taking the car back to Capital’s office in Jackson, Steadman took the company ear to her home in Scott County, so she would have it Monday morning. The afternoon of the accident, Steadman decided to wash the company car in preparation for the trip to Tupelo on Monday. She requested that her thirteen (13) year-old half-sister, Beth Williams, move the 1987 Cutlass insured by Farm Bureau over to where Steadman had just finished washing the company car, so that Steadman could wash it as well. In moving the Cutlass, Beth Williams lost control and ran into Capital’s car. As a result of the collision, Capital’s car sustained damage in the amount of $5341.31.
Following the accident on Saturday, Stead-man called the Farm Bureau agent on Sunday, August 7, 1988, and was advised to call the Farm Bureau adjuster, Billy Alford, Monday morning. Also on Sunday, Mr. Steadman took the company car to his place of employment, Harreld Chevrolet in Canton. On Monday morning, Steadman reported the claims to Mr. Alford, and a loss notice was prepared. Since both cars were in Canton for repairs, the claim was assigned to Canton Farm Bureau adjuster, Shelby Melvin. The loss notice was routinely forwarded to Farm Bureau District Claims Manager, Charlie Middlebrook, and received on Tuesday, August 9, 1988. After reviewing the notice and talking with Mr. Alford, Mr. Middlebrook noted a possible coverage problem since a company car was involved in the collision. Pursuant to Mr. Middlebrook’s instructions, a non-waiver and statement were obtained from both Mr. and Mrs. Steadman. After gathering and reviewing this information on Wednesday, August 10, 1988, the Farm Bureau, through Mr. Alford, advised Mr. Stead-man that the Farm Bureau would not extend coverage under the policy to the damage to Capital’s car. Mr. Steadman advised Alford that he would hire an attorney. On Thursday, August 11, 1988, Mr. Steadman requested a written letter of denial.
The decision denying the claim was submitted to the Farm Bureau claims committee on Friday, August 12, 1988, for further review and the committee unanimously agreed there was no coverage under the policy. On Friday, August 12, 1988, Mr. Middlebrook wrote to Mr. Steadman setting forth the basis of the Farm Bureau’s denial. On Monday, August 15, 1988, a check in the amount of $2,820 was issued to Mr. Steadman for the damage to the 1987 Cutlass insured under the Farm Bureau policy.
Ill
Farm Bureau denied coverage to the Steadmans for the damage to the company ear based on exclusion (f) in the Farm Bureau automobile policy, which reads:
*590 This policy does not apply under Coverage B (Liability Coverage) to injury to or destruction of property (1) owned or transr ported by the insured; (2) rented to or in charge of the insured other than a residence or private garage damaged or destroyed by a private passenger automobile covered by this policy.
Section 63-15-43, Mississippi Code Annotated (1972), requires motor vehicle insurers to include such an exclusion in their policies. Section 63-15-43(5)(c) reads, “Such motor vehicle liability policy shall not insure any liability because of injury to or destruction of property owned by, rented to, in charge of or transported by the insured.” Id. Farm Bureau’s position is that Misty Steadman was “in charge of’ the company car within the meaning of exclusion (f) when the car was damaged. They point to the facts that Mrs. Steadman had been entrusted by her employer with custody and supervision over the car, that Mrs. Steadman drove the company car to her property at her own discretion, and that Mrs. Steadman did not transfer the power or right to move the car to anyone else.
Appellant contends that Mississippi caselaw requires a different reading be given to exclusion (f)’s “in charge of’ provision. She contends that under Wyse v. Dixie Fire and Casualty Co., 136 So.2d 578 (Miss.1962), an individual cannot be deemed in charge of a vehicle unless that individual was actually driving the vehicle at the time the vehicle was damaged. Thus, contends Steadman, because the company car was sitting unoccupied at the time it was run into by Stead-man’s younger sister, Steadman cannot under Mississippi law be deemed to have been in charge of the car.
In Wyse, Don Wyse, Jr. secured his father’s car so that he and one of his close friends, John Overton, could travel from Greenville, Mississippi, to Jackson. After traveling some distance, Wyse became sleepy. He stopped the car and asked his companion, Overton, to drive. Overton took the wheel and drove while Wyse dozed on the front seat beside him. Somewhere, near Flora, Mississippi, Overton drove the car into a barricade across a portion of Highway 49, and the car belonging to Wyse, Sr. was damaged. Wyse, Sr. sued John Overton, the driver of the car, in the County Court of Washington County for damages to the automobile and obtained a verdict for $1570. Overton’s father, John Overton, Sr., had liability insurance on his own automobile through Dixie Fire and Casualty Co. The policy included as an insured any relative residing in the named insured’s household. John Overton, Jr. was thereby brought under the umbrella of the policy’s coverage. Wyse, Sr. brought suit against the insuror to recover the amount of the judgment against Over-ton, Jr.
There was an exclusion in the Overton policy substantially the same as that in the instant case. The insurer was granted a directed verdict by the lower court, and the Mississippi Supreme Court was asked to construe the meaning of the Dixie “in charge of’ exclusion. The Court held that “within the contemplation of the insurance contract, young Overton, the driver of the car, was in charge thereof at the time of the accident.” 136 So.2d at 580.
In reaching its conclusion, this Court declared that it was adopting the reasoning of the Pennsylvania and Tennessee Courts as indicated in the cases of Speier et ux. v. Ayling, 158 Pa.Super. 404, 45 A.2d 385 (1946) and Monroe County Motor Company et al. v. Tennessee Odin Insurance Co., 33 Tenn.App. 223, 231 S.W.2d 386 (1950), respectively. Id. Both eases reached the same conclusion where a third party was driving the car in question. Speier, 158 Pa.Super at 405, 45 A.2d at 387; and Monroe County Motor Company, 33 Tenn.App. at 244, 231 S.W.2d at 396.
Farm Bureau makes several responses to Steadman’s claim that Wyse mandates a reading that an individual be physically driving a car at the time of damage in order to be considered in charge of the vehicle. First, Farm Bureau correctly notes that, in deciding the Wyse case, this Court did not attempt to or purport to construe the facts of that case as the only set of circumstances under which an individual could be deemed “in charge of’ a motor vehicle. The Court simply held that under the facts there presented, *591 the driver of the car would be deemed to be in charge of the ear. See Wyse at 580.
As further evidence that the Court did not intend to create a “driving” prerequisite to “in control of,” Farm Bureau argues that such an interpretation would be inconsistent with the policy behind the “in charge of’ exclusion mandated by § 68-15-43, the generally-accepted interpretation of “in control of,” and other Mississippi caselaw construing similar provisions.
Mississippi does not maintain the legislative history on its statutes, but a number of courts' have noted the general policy lying underneath liability insurance “in charge of’ exclusions. The Third District Illinois Court of Appeals observed in State Farm Fire and Casualty Co. v. Kohen, 98 Ill.App.3d 860, 54 Ill.Dec. 242, 244, 424 N.E.2d 992, 994 (1981), that:
The purpose of the [“in charge of’] clause in issue is to exclude from liability coverage damage to property of the insured. The justification for the exclusion of this kind of exposure from automobile liability insurance was given in Parry v. Maryland Casualty Co., 228 App.Div. 393, 395, 240 N.Y.S. 105, 107 (1930): “The limitations relate to property in which the insured has either a general interest or a special interest. As to such property, both frequency of accident and the opportunities for a fraud create a high hazard and make the risk undesirable, at least at a rate charged for the ordinary coverage.” The exposure excluded in the liability coverage may be separately insured under physical damage (collision) coverage.
In National Surety Co. v. Allstate Insurance Co., 115 N.J.Super. 528, 280 A.2d 248, 257 (1971), the Superior Court of New Jersey noted that “The reason for this exclusion is to provide liability insurance at a reasonable rate. The insured desiring the elimination of this clause can do so for an additional premium, or even better, procure the additional type of insurance policy needed.” (quoting Ramsey, “The Care, Custody, Control Exclusion of Liability Insurance Policies”, July 1958, Insurance Counsel J. 288)). The National Surety Court also noted that:
Even the ordinary owner of an automobile knows the difference between automobile liability insurance, and is aware of the fact that normally a liability policy does not cover damage to his own car or property. If he wants collision insurance to cover damage to property owned by him, he knows he must pay an additional premium for it, and he cannot assert that he had a reasonable expectation that, simply because he had a liability policy, he had coverage for his own property.
Id. 280 A.2d at 252.
Given that the aim of the “in charge of’ exclusion is to protect the affordability of automobile liability insurance by restricting its coverage to property not owned or under the dominion of the insured, the policy be-' hind § 63-15-43 would be defeated if the definition of “in charge of’ were restricted to the act of driving of a vehicle. It is eommon-sensical that there are an infinite number of ways beyond the act of driving that an insured may exhibit dominion over a car’s location and operation. Thus, if “in charge of’ were restricted to driving, there would still be numerous and frequent occasions where the very thing sought to be prevented by § 63-15-43 would occur — insureds collecting for damage to property over which they exercised dominion.
Furthermore, it is generally recognized that the controlling criterion for determining “charge” is whether the insured had the right to exercise dominion or control over the property in question. State Farm Fire and Casualty Company v. Kohen, 98 Ill.App.3d 860, 54 Ill.Dec. 242, 245, 424 N.E.2d 992, 995 (1981) (“the ordinary meaning of ‘in charge of is possession of the property and some degree of control of or dominion over it so as to give the insured an ownership-like status and insurable interest in the property”); Security Mutual Casualty Company v. Johnson, 584 S.W.2d 703, 704 (Tex.1979) (“Generally, the criterion for determining whether property is “in charge of’ the insured within such an exclusion is the insured’s right to exercise dominion or control over the property.”); Georgia Casualty & Surety Company v. Swearingen, 149 Ga.App. 512, 254 S.E.2d 735, 737 (1979) (“in charge of’ does not mean *592 mere ‘possession’ but implies with the permission of the owner and the right of insured to exercise dominion or control over it.”); Commercial Union Insurance Company of New York v. Hardcastle, 188 So.2d 698, 700 (La.Ct.App.1966) (“While the word charge has a broad and varied meaning, a person or thing could not be said to be ‘in charge of an insured within the meaning of a contract of insurance unless he has the right to exercise dominion or control over it.”); Cohen & Powell, Inc. v. Great American Indemnity Co., 127 Conn. 257, 16 A.2d 354, 355 (1940) (“a person or thing is not ‘in charge of an insured within the meaning of the policy unless he had the right to exercise dominion or control over it”); 12A Couch on Insurance. 2d § 45:968 (1981) (“Generally, the criterion of whether property is “in charge of’ the insured within such an exclusion is the insured’s right to exercise dominion or control over such property.”). The prerequisite of driving argued for by Appellant is thus inconsistent with the prevailing interpretation of “in charge of’ provisions as well.
In State Auto Mutual Insurance Company v. Glover, 253 Miss. 477, 176 So.2d 256 (1956), the Mississippi Supreme Court was called upon to construe a provision similar to that at issue in the ease at bar. The construction it gave that provision indicates that it views “in charge of’ in a way consistent with the majority view and inconsistent with what Steadman contends. In Glover, an insured operated a garage where he engaged in the business of repairing automobiles. The insured’s policy with State Auto Mutual Insurance included a section stating:
To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property of others of a kind customarily left in charge of garages, including the loss of use thereof, caused by accidental collision or upset of such property while in charge of the insured in connection with his automobile sales agency, repair shop, service station, storage garage or public parking place operations.
176 So.2d at 258. During the regular course of the insured’s business, an individual placed his car with the insured to have his carburetor repaired. A piece of metal somehow entered the engine while the repairs were being made, and extensive internal damage was done to the motor. The Court ultimately held that:
It is clear that the policy does not and was not intended to afford coverage where damage occurs to a customer’s automobile while it is in charge of the insured for repairs, either as a result of error, mistake, or omission on the part of a mechanic in making the repairs, or from some casualty other than as a result of “upset” or “collision”.
Id. The important point for purposes of the case at bar is that the Court found the car to be in the charge of the insured at the time the damage occurred, despite the fact the car was sitting still in the insured’s garage at that time.
In the instant case, the car belonging to Capital Services Corporation had been placed under the care and supervision of Steadman to facilitate the carrying out of her corporate responsibilities. The corporation left the use of the car in the sole discretion of Steadman during the time she was in possession. Steadman had been in sole possession of the car for at least twenty-four hours before the accident occurred. It was expected that she would retain possession of the car for at least forty-eight more hours before returning the car to the offices of the corporation. She placed the ear in the location it stood in when it was hit by her sister. She had not authorized anyone else to move or drive the company car, and no one had done either of those things. Under these circumstances, it is clear that Steadman had dominion and control over the company car at the time it was damaged. She was therefore “in charge of’ the car. It follows that the trial court correctly granted summary judgment on all issues.
IV
For the foregoing reasons the judgment of the circuit court is affirmed.
AFFIRMED.
*593 HAWKINS, C.J., PRATHER, P.J., and PITTMAN, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
McRAE, J., dissents with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.