Hillsborough
No. 88-504

PATRICIA A. SKORKA

v.

AMICA MUTUAL INSURANCE COMPANY

August 30, 1989

*Upshall, Cooper & Temple P.A.*, of Concord (*Charles S. Temple* on the brief), by brief for the plaintiff.

*Sullivan, Gregg and Horton P.A.*, of Nashua (*Francis L. Cramer* on the brief), by brief for the defendant.

BATCHELDER, J. The defendant, AMICA Mutual Insurance Company (AMICA), appeals a decision of the Superior Court (*Dalianis*, J.) granting the plaintiff's cross-motion for summary judgment and requiring the defendant to provide coverage and a defense for the plaintiff's automobile accident case, as well as awarding the plaintiff attorney's fees. We reverse.

The facts of this case are not in dispute. The plaintiff, Patricia A. Skorka, rented a truck from Q.C. Rental d/b/a Budget Rent-A-Car (Q.C. Rental). While operating the truck, the plaintiff collided with the roof of a drive-in bank in Concord, damaging both the vehicle and the building. At the time of the accident, AMICA insured the plaintiff under an automobile combination liability policy. The insurance company paid for the damage to the building, but refused coverage for the damage to the rented truck. When Q.C. Rental instituted suit against Skorka to recover damages for repairs to its truck, the plaintiff brought this declaratory judgment action, *see* RSA 491:22, to determine whether AMICA was obligated to provide coverage.

The relevant portions of the insurance policy provide protection against property damage "arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile." Under the persons insured section, the policy covers the

named insured for use of a nonowned automobile. The policy defines a nonowned automobile as "an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile." The defendant has admitted in its pleadings below and here on appeal that the rented truck was a nonowned automobile as the policy defines one. It contends, however, that an exclusion in the policy prevents coverage. Specifically, exclusion (i) provides that the policy shall not apply "to injury to or destruction of (1) property owned or transported by the insured or (2) property rented to or in charge of the insured other than a residence or private garage."

The defendant moved for summary judgment, *see* RSA 491:8-a, arguing that no genuine issue of material fact existed as to whether the exclusion operated to deny coverage to the plaintiff. In response, the plaintiff filed a cross-motion for summary judgment, contending that the exclusion contradicted the property damage liability provision for nonowned vehicles and that the exclusion was ambiguous, requiring a ruling in favor of coverage. The trial court agreed that the exclusion was ambiguous. In so concluding, the trial court found that the parties reasonably differed as to whether the term nonowned automobile included a rented automobile, although AMICA conceded that the rental truck was included in the term. The court went on to say, however, that the exclusion clause was ambiguous because it did not make clear that "property rented to" necessarily meant "automobile rented to." The court noted that when the policy referred to an automobile, it used the word automobile. For example, in exclusions (g), (h), and (j), the policy specifically uses the word automobile or nonowned automobile in describing certain exceptions to coverage.

The policy language upon which this case turns is not new to this court. The same language was reviewed in *MacDonald v. Hardware Mutual Casualty Co.*, 105 N.H. 458, 202 A.2d 489 (1964), and was found upon similar facts (operator "trying out" car owned by garage company in collision with other vehicle) to preclude coverage by the operator's liability insurance carrier for damage to the vehicle being operated by him. This court determined that the nonowned vehicle was "'property [of another] in charge of the insured'" and thereby exempt from coverage by the exclusionary language, as is the case here. This view of the interpretation of the policy language is represented by the apparent weight of judicial authority on the subject. *See, e.g., Wyatt v. Wyatt*, 239 Minn. 434, 58 N.W.2d 873 (1953); *Wyse v. Dixie Fire & Casualty Co.*, 242 Miss. 508, 136 So. 2d 578 (1962); *National Surety Co. v. Allstate Ins.*, 115

N.J. Super. 528, 280 A.2d 248 (1971); *Speier et ux. v. Ayling et al., Aplnts.*, 158 Pa. Super. 404, 45 A.2d 385 (1946); *Security Mut. Cas. Co. v. Johnson*, 584 S.W.2d 703 (Tex. 1979); *Mallory v. Vt. Mutual Fire Ins. Co. et al.*, 126 Vt. 237, 226 A.2d 901 (1967). *Contra American Casualty Co. v. Aetna Casualty & Surety Co.*, 251 Md. 677, 248 A.2d 487 (1968); *Farmland Mut. Ins. Co. v. Farmer's Elevator, Inc.*, 404 N.W.2d 473 (N.D. 1987).

The practical basis for this view is stated in plain terms in the following language, which is persuasive to this court:

> "Normally, a liability policy does not cover damage to the insured's property or property within his control. If an insured desires coverage on property that he owns or that is in his charge, he must secure collision or comprehensive coverage and pay an additional premium. There was no collision coverage in effect at the time of the accident and it cannot be asserted that such coverage was expected under the provisions of the liability policy."

*Security Mut. Cas. Co. v. Johnson, supra* at 705.

This case was presented to the trial court on a motion and counter-motion for summary judgment. On the record before us, we find *MacDonald* a persuasive force and, accordingly, reverse.

*Reversed.*

All concurred.