# Illinois Official Reports

## Appellate Court

---

### *Founders Insurance Co. v. Walker*, 2015 IL App (1st) 141301

---

| | |
|---|---|
| Appellate Court Caption | FOUNDERS INSURANCE COMPANY, Plaintiff-Appellee, v. ARIADNE M. WALKER, SYBIL MORRISON, and EAN SERVICES, LLC, d/b/a Enterprise Rent-a-Car, Defendants-Appellants. |
| District & No. | First District, Fourth Division<br>Docket No. 1-14-1301 |
| Filed | July 16, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-5060; the Hon. Leroy K. Martin, Jr., Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Samuel A. Shelist, of Shelist Law Firm LLC, of Chicago, for appellants.<br><br>Shari Shelmadine, of Law Office of Shari Shelmadine, of Chicago, for appellee. |
| Panel | JUSTICE ELLIS delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment and opinion. |

**OPINION**

¶ 1     In this declaratory judgment action, defendant Enterprise Rent-a-Car (Enterprise) appeals from an order of the circuit court of Cook County granting summary judgment in favor of plaintiff, Founders Insurance Company (Founders). Founders had issued an automobile insurance policy to defendant Sybil Morrison that included liability coverage but not collision coverage. Morrison later rented a vehicle from Enterprise that was involved in a hit-and-run accident, resulting in damage to the rented vehicle. Enterprise sued Morrison for the damage to the rental car in a lawsuit not at issue in this appeal. Founders filed this action for a declaration that it had no duty to defend or indemnify Morrison for the damage. The trial court agreed and entered summary judgment for Founders.

¶ 2     Founders made two arguments in support of summary judgment, each of which it renews on appeal. First, it claimed that its liability coverage was not triggered because collision damage to a rental vehicle fell under collision coverage, which Morrison did not purchase from Founders. Second, Founders claimed that, even if liability coverage included damage to the rental vehicle, an exclusion within that liability coverage applied. Either way, it argued, Founders was not obligated to Morrison for the damage to the rental vehicle. The trial court's reasoning is not in the record. But we agree with Founder's second argument and thus affirm.

¶ 3                                         I. BACKGROUND
¶ 4                                    A. The Founders Insurance Policy
¶ 5     The relevant facts are not in dispute. Morrison was the named insured on an automobile insurance policy with Founders (the Policy). She paid a premium of $167, which covered her 2010 Hyundai Elantra for the period of March 1, 2012 through September 1, 2012.

¶ 6     Founders' comprehensive policy, not all of which Morrison purchased, contains the following parts:

> "Part I–Liability" (which included two subparts for bodily injury liability coverage and property damage liability coverage);
>
> "Part II–Expenses For Medical Services" (which included medical payments coverage);
>
> "Part III–Physical Damage" (which contained four subparts, including collision coverage);
>
> "Part IV–Uninsured Motorist Coverage" (which included two subparts for uninsured motorist bodily injury coverage and uninsured motorist property damage coverage);
>
> "Part V–Underinsured Motorist," and
>
> "Part VI–Non-Owner Coverage."

¶ 7     According to the "Declaration Page," Morrison only purchased insurance for "Part I–Liability" coverage and for "Part V–Underinsured Motorist" coverage. (Part V is not relevant to this appeal.) The salient point is that Morrison purchased liability coverage under Part I but did not purchase coverage under "Part III–Physical Damage," which included collision coverage.

## B. The Enterprise Automobile Rental

¶ 9     On May 1, 2012, Morrison rented an automobile from Enterprise, with a return date of May 8, 2012. The rental contract contained a "Collision Damage Waiver Notice," which stated:

> "This contract offers, for an additional charge, a Collision Damage Waiver to cover your financial responsibility for damage to the rental vehicle. The purchase of a Collision Damage Waiver is optional and may be declined. You are advised to carefully consider whether to sign this waiver if you have rental vehicle collision coverage provided by your credit card or collision insurance on your own vehicle. Before deciding whether to purchase the Collision Damage Waiver, you may wish to determine whether your own vehicle insurance affords you coverage for damage to the rental vehicle and the amount of deductible under your own insurance coverage."

¶ 10     Morrison declined all of the optional waivers and protections offered by Enterprise.

¶ 11     On May 6, 2012, Morrison's rental car was involved in a hit-and-run accident, resulting in damage to the rental car. Morrison submitted a claim to Founders for physical damage coverage. Founders denied that claim on the basis that Morrison's insurance policy with Founders did not include collision coverage.

¶ 12     As an aside, we note that, when the rental car was involved in that accident, the car was being driven not by Morrison but by her acquaintance, Ariadne Walker. But the fact that someone else was driving the vehicle at the time of the accident is not otherwise relevant to this case, as Founders did not base its denial of coverage on that ground.

## C. The Enterprise Lawsuit

¶ 14     On or about December 27, 2012, Enterprise filed a complaint against Morrison and Walker (No. 12 M1 177007) for damage to the vehicle it had rented to Morrison. The complaint contained five counts: count I was for bailment in contract; count II was for negligence and property damage; count III was for conversion; count IV was for negligent entrustment; and count V was for bailment in tort. Among other things, Enterprise alleged in count I that Morrison failed to make payments for the damages to the vehicle. In count II, Enterprise claimed that Walker's negligent operation of the vehicle caused property damage. In count III, Enterprise alleged that Walker was not an authorized user of the vehicle under the rental agreement. Count IV alleged that Morrison negligently entrusted the vehicle to Walker. In count V, Enterprise claimed that Morrison breached her bailment with Enterprise.

## D. The Declaratory Judgment Action Filed by Founders

¶ 16     Shortly after the Enterprise lawsuit was filed, Founders filed the instant complaint for declaratory judgment, naming Enterprise, Morrison and Walker as defendants, requesting that the court determine as a matter of law that Founders had no duty to defend or indemnify Morrison or Walker in connection with the underlying lawsuit and that Enterprise was not entitled to recover any monies under the Policy.

¶ 17     First, Founders alleged that its insurance policy with Morrison did not include collision coverage. Second, Founders alleged that, even if this loss were somehow included within the coverage Morrison did purchase–"Part I–Liability" coverage–that liability coverage contained an "exclusion (j)" that disclaimed liability, in pertinent part, for "injury to or destruction of *** property rented to or in charge of the insured." Either way, Founders claimed, it had no duty to

defend or indemnify Morrison or Walker in connection with the underlying lawsuit or the motor vehicle accident, and Enterprise was not entitled to recover any monies under the Policy.

¶ 18    Initially, Enterprise moved to dismiss Founders' complaint, arguing that the liability coverage applied to the rental car accident and that, for various reasons, "exclusion (j)" in that liability coverage did not alter that conclusion. The trial court denied that motion, and Enterprise has not appealed that ruling.

¶ 19    Enterprise then filed its answer and counterclaim, seeking a declaratory judgment that Founders had a duty to defend and indemnify Morrison and Walker. Founders filed a motion for summary judgment, raising the same two legal arguments it asserted in its complaint. The trial court granted that motion. This appeal followed.

## II. ANALYSIS

¶ 21    Founders raised two arguments in support of its motion for summary judgment. The trial court's written order does not explain the court's reasoning other than referencing the "reasons stated in court." We lack a transcript of that hearing, so we do not know on which of the two bases the trial court granted summary judgment. Regardless, the parties agree that the arguments involve purely legal questions, and we may affirm a grant of summary judgment on any basis apparent in the record, regardless of whether the trial court relied on that basis. *Harlin v. Sears Roebuck & Co.*, 369 Ill. App. 3d 27, 31-32 (2006).

¶ 22    The construction of an insurance policy and the determination of contractual rights involve questions of law that are properly addressed in a summary judgment procedure. *Certain Underwriters at Lloyd's, London v. Central Mutual Insurance Co.*, 2014 IL App (1st) 133145, ¶ 7. That is particularly true where, as here, the parties agree that no factual disputes are present, and thus the only question is who is entitled to judgment as a matter of law. See *Schultz v. Illinois Farmers Insurance Co.*, 237 Ill. 2d 391, 399 (2010). Both a circuit court's grant of summary judgment and the construction of an insurance policy are reviewed *de novo*. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 360 (2006).

¶ 23    "An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." (Internal quotation marks omitted.) *State Farm Mutual Automobile Insurance Co. v. Rodriguez*, 2013 IL App (1st) 121388, ¶ 17. This court's primary objective in construing the policy is to ascertain and give effect to the intentions of the parties as expressed by the words of the contract. *State Farm Mutual Automobile Insurance Co. v. Enterprise Leasing Co. of Chicago*, 386 Ill. App. 3d 945, 949 (2008). We construe the policy as a whole, with due regard to the risk undertaken, the subject matter insured, and the purposes of the entire contract. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 108 (1992).

¶ 24    As noted, Founders raises two arguments in support of affirming summary judgment in its favor. The first argument is that the "Part I–Liability" coverage does not apply to Morrison's claim. The second is that, if we found that Part I did apply, then an exclusion contained within Part I nevertheless excludes coverage for this claim. If we agree with Founders that Part I is not applicable in the first instance, then the second argument, based on an exclusion in that same Part I, is moot. Thus, we will begin our analysis with the first argument raised by Founders.

¶ 25                    A. Liability Coverage and Collision Coverage
¶ 26                    1. Liability Coverage Versus Collision Coverage
¶ 27        In arguing that the "Part I–Liability" policy does not apply to physical damage to the car Morrison was renting, Founders' principal focus is not on a textual interpretation of the language of Part I, but rather on the more general observation that Morrison's claim would be covered under a different part of the comprehensive policy that Founders offers–"Part III" coverage for collision damage. Liability insurance, says Founders, is "third-party" coverage that does not apply to this situation, whereas collision insurance–which is "first-party" coverage–would have been applicable had Morrison purchased it. Since Morrison did not buy that collision coverage, Founders argues, she is not entitled to coverage.

¶ 28        There is clearly a distinction between liability insurance and collision insurance. "Liability coverage ordinarily protects the insured against loss and injury to others for which the insured might be liable resulting from use of the vehicles designated in the policy, while collision insurance provides protection against loss or injury to the vehicles described in the policy as a result of contact with another object." *Frontier Ford, Inc. v. Carabba*, 747 P.2d 1099, 1101 (Wash. Ct. App. 1987); *Farmers Butter & Dairy Cooperative v. Farm Bureau Mutual Insurance Co.*, 196 N.W.2d 533, 535 (Iowa 1972) (same). As this court explained long ago, "[i]f, while driving a car owned by him, [the insured] is involved in a collision, damage to his own car is ordinarily covered only by the type of insurance commonly known as 'Collision and Upset,' easily distinguished from coverage for his liability to the owner of any other vehicle involved in the collision." *Welborn v. Illinois National Casualty Co.*, 347 Ill. App. 65, 68 (1952). "Even the ordinary owner of an automobile knows the difference between automobile liability insurance and collision insurance, and is aware of the fact that normally a liability policy does not cover damage to his own car or property." *National Surety Co. v. Allstate Insurance Co.*, 280 A.2d 248, 252 (N.J. Super. Ct. Law Div. 1971).

¶ 29        As these cases make clear, in the typical case where one's own car is involved in a car accident, the difference between liability insurance and collision insurance is obvious: any damage to one's own car will be covered by collision insurance, while any liability to *others* resulting from that collision–personal injury to another person, or damage to another person's car or property–would be covered under liability insurance. Again, in that typical case, the insured would have no need for liability insurance to cover the damage to her own car, because nobody would sue her for the cost of fixing her own car.

¶ 30        But this case does not involve the typical situation discussed in the cases above, because the insured, Morrison, was not driving a car she owned. She was renting a car. The car was owned by Enterprise. The case law cited above does not speak to this factual setting. See *Welborn*, 347 Ill. App. at 68 ("If, while driving a car *owned by him*, [the insured] is involved in a collision, damage to his *own car* is ordinarily covered" by collision insurance. (Emphases added.)); *National Surety*, 208 A.2d at 252 (insured is aware that "normally a liability policy does not cover damage to *his own car* or property" (emphasis added)).

¶ 31        In this case, Ms. Morrison quite clearly *does* have liability for the damage to the vehicle she was driving (or more accurately, that her friend was driving)–she has liability to the owner of that car, Enterprise, who in fact sued her for damages. Because "[t]ypically, liability coverage includes damage to property owned by someone other than the insured" (*State Farm Fire & Casualty Co. v. Kohen*, 98 Ill. App. 3d 860, 862 (1981)), and here, the damaged vehicle was

- 5 -

owned by someone other than Morrison, we see no reason why we should automatically assume that liability coverage would not apply to this claim.

¶ 32     Thus, Founders' use of the phrases "liability" versus "collision" coverage does not resolve our question. Nor does its use of the monikers "third-party" coverage to refer to liability insurance and "first-party" coverage for collision insurance, or its argument that Enterprise is attempting to "insert a 'first-party' component into a 'third-party' coverage."

¶ 33     It may be true that Morrison's claim would have been covered under Part III's collision coverage, but that is not the question before us. We will not concern ourselves with coverage that Morrison did not purchase. We are concerned with the policy she did purchase, and whether *that* policy covers this loss. It is true that we must construe the insurance policy as a whole (*Outboard Marine Corp.*, 154 Ill. 2d at 108), but that means we must construe the policy the insured *purchased* as a whole, because it reflects the entirety of her agreement with the insurance company. It does *not* mean that we should examine other insurance policies on different topics that are not part of the insurer-insured contract before us, because then we might end up holding language against the insured that she may never have read or even known about (and to which she certainly did not agree). We would also be playing solely on the insurance company's turf, interpreting language in a way that suits that company's overall scheme of coverage, possibly entirely unbeknownst to the insured, who purchased only a fraction of that coverage.

¶ 34     The same is true of Founders' reference to "first-party" versus "third-party" insurance. We do not see those terms in the insurance policy at issue. If we did, and those terms were relevant, then of course we would interpret them. See, *e.g.*, *Abram v. United Services Automobile Ass'n*, 395 Ill. App. 3d 700, 717 (2009). Otherwise, as here, that verbiage is simply insurance parlance that has no bearing on the plain meaning of the language in the insurance policy to which the insured, Ms. Morrison, agreed.

¶ 35     Thus, rather than concern ourselves with whether a non-purchased part of Founders' comprehensive policy would have covered Morrison's claim, or whether the facts of this case should fall under the generic terms of "liability" or "collision" or "first-party" or "third-party" coverage, we will simply review the language of the insurance policy Morrison purchased and determine if it covers Morrison's claim. See *Enterprise Leasing Co. of Chicago*, 386 Ill. App. 3d at 949 (court's primary objective in construing policy is to give meaning to words contained in policy).

¶ 36                         2. The Plain Language of the Insurance Policy
¶ 37     The "Part I–Liability" coverage Morrison had with Founders reads as follows:

"**PART I–LIABILITY**

**Coverage A–Bodily Injury Liability; Coverage B–Property Damage Liability.** To pay on behalf of the insured all sums *which the insured shall become legally obligated to pay as damages, because of*:

A. bodily injury,

or

B. property damage

*arising out of the operation*, maintenance *or use of* the owned automobile or *any non-owned automobiles* and the Company shall defend any suit alleging such bodily

injury or property damage and seeking damages which are payable under the terms of this policy ***." (Emphases added.)

¶ 38 Morrison's claim to Founders falls squarely within the scope of this highlighted language. Slightly paraphrasing the language, Morrison has "become legally obligated to pay damages because of property damage arising out of the operation or use of a non-owned automobile." She rented a car from Enterprise; it was involved in an accident, resulting in damage to that vehicle; and she is now legally obligated to the owner of that car, Enterprise, for that car damage.

¶ 39 Beyond simply pointing to the fact that Part III's collision coverage, which Morrison did not purchase, would have applied here, Founders also argues that the plain language in Part I is inapplicable. Specifically, Founders claims that the language above covers damage "arising out of the operation, maintenance or use *of* the owned or non-owned automobile–not damage *to* the non-owned vehicle." (Emphases in original.)

¶ 40 But Founders' textual argument is based on the wrong text. The clause it quotes above is concerned with the context in which the damage must occur–"in the operation *** or use of the *** non-owned automobile." The controversy here is not whether the damage occurred while the rental car was being operated. The issue here is whether the policy covers a particular type of damage–damage to the rental car itself.

¶ 41 The language in the policy that concerns what kind of damage is covered is the simple phrase, "property damage." It is true that this language does not affirmatively include damage to the rental car itself, but neither does it exclude it. We see no reason why the rental car driven by the insured would not be considered "property" in this context. After all, if the rental car hit another car, Morrison's liability for "property damage" undeniably would include the liability she faced for damage to that other car; that, in fact, is the classic example of a liability policy, as even Founders points out. See *Welborn*, 347 Ill. App. at 68 (liability coverage applies for insured's liability to owner of other vehicle involved in collision).

¶ 42 So we know that "property damage," in this context, must include damage to a car. Why would it not include the rental car the insured is driving, as well as any other car it hits, as long as the insured is exposed to legal liability as a result of the damage? We can think of no principled reason why it could not. We have not been directed to any case law that held otherwise, nor have we found any. In construing an automobile liability policy with language nearly identical to that here, the New Hampshire Supreme Court rejected the trial court's conclusion that the word "property" was ambiguous and held that it clearly included a rental car. *Skorka v. Amica Mutual Insurance Co.*, 563 A.2d 442, 443 (N.H. 1989). Another court held that a state law permitting an automobile liability exclusion for "damage to property rented to *** the insured" included damage to the rental car being driven by the insured. (Internal quotation marks omitted.) *Connecticut Car Rental, Inc. v. Patla*, 677 A.2d 967, 970-71 (Conn. App. Ct. 1996); see Conn. Agencies Regs. § 38a-334-5(c)(7)(B) (1996). In other cases involving similar policy language, the courts seemed to take it for granted that "property damage" included damage to the vehicle driven by the insured; in each of those opinions, the court proceeded to decide the case based on an exclusion contained within that policy, which would not have been necessary had the claim not fallen under the policy in the first place. See, *e.g.*, *Kohen*, 98 Ill. App. 3d at 862-64; *Wyatt v. Wyatt*, 58 N.W.2d 873, 875 (Minn. 1953).

¶ 43    In our view, the use of the phrase "property damage" clearly includes damage to the rental car itself. And though we do not find this phrase the least bit ambiguous in this context, any ambiguity would be construed against the insurer and in favor of coverage anyway. *St. Paul Fire & Marine Insurance Co. v. Antel Corp.*, 387 Ill. App. 3d 158, 164 (2008); *Outboard Marine Corp.*, 154 Ill. 2d at 108-09.

¶ 44    Thus, Morrison's claim for coverage, arising out of her liability to Enterprise for the damage to the car she rented from Enterprise, falls within the *general* language of the "Part I–Liability" coverage Morrison purchased from Founders. Having determined that Part I coverage applies generally to this claim, we next consider the exclusion contained in Part I, on which Founders relies for its second basis for denying coverage.

¶ 45                    B. Exclusion to Liability Coverage ("Exclusion (j)")

¶ 46    Founders argues that, if this court finds that Part I coverage applies to this loss–as we have–then exclusion (j) under Part I of the Policy defeats coverage, in any event.

¶ 47    The exclusion states:

> "This policy does not apply under Part I:
>
> * * *
>
> "(j) *to injury to or destruction of* (1) property owned or transported by the insured or (2) *property rented to or in charge of the insured* other than a residence or private garage; or (3) property as to which the insured is for any purpose exercising physical control ***." (Emphases added.)

¶ 48    The plain language of exclusion (j) demonstrates that Morrison's claim is excluded under Part I. Her claim involves "injury to or destruction of property rented to *** the insured." She rented a car from Enterprise; it was damaged to some extent–either "injured" or destroyed–and she now seeks coverage for her liability exposure to Enterprise for that loss.

¶ 49    Enterprise's attempts to avoid exclusion (j) are unconvincing. It argues that this exclusion cannot include damage to a rental car driven by the insured. It claims that "property" means real property and does not include an automobile. It further argues that the use of the word "injury" instead of "damage" supports its position, because "only people are injured."

¶ 50    We disagree with Enterprise's position. First of all, we have previously discussed at length that the word "property" in Part I includes a motor vehicle, and that it would be nonsensical if it did not. See *supra* ¶¶ 41-43. And the reference to "injury" in this language does not persuade us that this language was intended to apply to people only; there is, in fact, no reference to human beings anywhere within exclusion (j). The entire exclusion refers only to "property." If the word "injury" can only refer to people, then the entirety of exclusion (j) would be wiped out of existence. While we interpret language in an insurance policy liberally in favor of coverage, we will not interpret language in a way that produces an absurd result. *United States Fire Insurance Co. v. Hartford Insurance Co.*, 312 Ill. App. 3d 153, 155 (2000).

¶ 51    In any event, the dictionary definition of "injury" includes "damages" as a synonym. Webster's Third New International Dictionary 1164 (1993). Likewise, the definition of "damage" in Webster's lists the word "injury" as a synonym. *Id*. at 571. See *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 436 (2010) (where term in insurance policy is not defined, courts may look to dictionary definition).

¶ 52    Our interpretation of exclusion (j) finds support in other decisions that considered this or a substantively identical provision–excluding coverage for damage to "property rented to or in charge of the insured"–in each case holding that these provisions excluded liability coverage for damage to a vehicle rented to or in charge of the insured. See, *e.g.*, *Kohen*, 98 Ill. App. 3d at 862-64; *Welborn*, 347 Ill. App. at 68-69; *Skorka*, 563 A.2d at 443; *Steadman v. Mississippi Farm Bureau Casualty Insurance Co.*, 626 So. 2d 588, 590 (Miss. 1993); *Patla*, 677 A.2d at 969-70; *Team Rental Group, Inc. v. ITT Hartford Group, Inc.*, 755 A.2d 382, 384 (Conn. Super. Ct. 1998) (rental car), *aff'd*, 755 A.2d 971 (Conn. App. Ct. 2000); *Wyatt*, 58 N.W.2d at 875.

¶ 53    This court once noted that provisions such as exclusion (j) here are "commonly found in most, if not all, automobile liability insurance policies." *Kohen*, 98 Ill. App. 3d at 862. Courts have identified the purpose behind this exclusion as allowing for lower premiums for insureds who seek a more minimal liability coverage. See *Steadman*, 626 So. 2d at 591. "The insured desiring elimination of this clause can do so for an additional premium" (*National Surety*, 280 A.2d at 257), in this case either by purchasing more comprehensive insurance from Founders or by purchasing insurance from the rental car company, Enterprise. Morrison did neither, and so her claim for liability resulting from the damage to her rental car is not covered by insurance.

¶ 54    Thus, while Morrison's claim falls generally within the coverage of Part I, the exclusion in paragraph (j), contained within Part I, excludes coverage. Founders has no legal obligation to Morrison arising from this accident and thus no obligation to Enterprise. Summary judgment in favor of Founders was properly granted.

¶ 55    We note in passing that Enterprise added a brief additional argument at the end of its brief, where it claims that the allegations against Morrison included tort claims that should be covered by the Founders policy. We do not consider this issue properly before us for two reasons. First, it was not raised below and is thus forfeited. See *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430-31 (2006). Second, this argument, all two sentences of it, contains no supporting reasoning or citation to relevant authority, in contravention of Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013). An issue that is "merely listed or included in a vague allegation of error" is not considered "argued" and does not satisfy Rule 341(h)(7)'s requirements. *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 36.

¶ 56    For the reasons stated above, the court properly entered summary judgment in favor of Founders. The judgment of the circuit court of Cook County is affirmed.

¶ 57    Affirmed.