2022 IL App (1st) 210889

No. 1-21-0889

Order filed September 29, 2022

Fourth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JAMES S. FINDLAY and SUSAN E. SMALL, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | 18 L 005936 |
| | ) | |
| CHICAGO TITLE INSURANCE COMPANY, FIDELITY | ) | |
| NATIONAL LAW GROUP, and GENEVIEVE M. BERNAL, | ) | Honorable |
| | ) | Margaret A. Brennan, |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE MARTIN delivered the judgment of the court, with opinion.
Justices Hoffman and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal finds its genesis in the earlier-decided case of *Katsoyannis v. Findlay*, 2016 IL

App (1st) 150036. That appeal resolved a dispute between neighboring property owners regarding

the existence and scope of an ingress-egress easement (yard easement) across beachfront property.

The yard easement was used to provide access to a beach easement.[1] James S. Findlay and Susan

E. Small (the Findlays), are the owners of the beachfront property at issue, described as Lot 5 in

_____

[1]An easement is a nonpossessory right or privilege in the real estate of another that entitles the
holder of the easement to use the burdened property for some specific purpose. *Nationwide Financial, LP
v. Pobuda*, 2014 IL 116717, ¶ 29.

the Winnetka Beach Subdivision.

¶ 2    George and Katherine Katsoyannis (the Katsoyannises) own Lot 8 in the same subdivision and Michael and Nikki Alexander (the Alexanders) own Lot 9. Neither of these lots have direct access to the beach easement. The Katsoyannises and Alexanders claimed that the previous owners of Lot 5 allowed property owners within the subdivision to use the purported yard easement to access the beach easement, thereby gaining access to the beach. Several disputes arose after the Findlays refused to allow residents of the subdivision to cross Lot 5 to access the beach easement.

¶ 3    The Katsoyannises and Alexanders subsequently filed a declaratory judgment action against the Findlays in the chancery division of the circuit court. The two families sought a declaration that a yard easement existed over Lot 5 and that they had the right to use it to access the beach easement. Chicago Title Insurance Company (CTIC), which had issued a title policy insuring the Findlay's title to Lot 5, provided them with a partial defense to the chancery action.

¶ 4    After resolution of the chancery action, the Findlays filed suit in the law division of the circuit court against CTIC and the attorney the title insurer retained to defend the Findlays in the chancery action. The Findlays asserted counts for breach of contract, bad faith, and legal malpractice. The allegations in these counts stemmed from CTIC's refusal to defend and indemnify the Findlays against all claims brought against them in the chancery action. The primary issue in this appeal is whether this refusal constituted a breach of CTIC's contractual duty to defend.

¶ 5                                  I. BACKGROUND

¶ 6    We summarize the relevant facts and procedural history from the record provided on appeal and this court's decision in *Katsoyannis*.

2

¶ 7                         A. *Katsoyannis v. Findlay* (Chancery Action)

¶ 8     The Winnetka Subdivision was created by a subdivision plat submitted to the Village of Winnetka by the La Salle National Bank (La Salle Bank), as trustee under a trust agreement dated April 30, 1959, known as Trust No. 22851. The Village of Winnetka approved the plat on November 3, 1959.

¶ 9     The subdivision consists of 10 residential lots near the shore of Lake Michigan. A review of the plat map shows that Lots 1 through 7 have designated private beach areas. See *Katsoyannis*, 2016 IL App (1st) 150036, App'x. Lots 8, 9, and 10 have no such private beach annexed to their property. *Id.* ¶ 42. The subdivision is bounded on the east by a beach running along Lake Michigan, on the west by Sheridan Road, on the north by Oak Street, and on the south by Cherry Street.

¶ 10    At the time the plat was approved, Cherry Street provided subdivision residents with unobstructed access to a 15-foot-wide beach easement on the edge of Lot 5. The beach easement runs from the bluff on the west side of the beach, east to Lake Michigan. In the 1990s, the Village of Winnetka erected a gate at the intersection of Cherry Street and Sheridan Road. When the gate was closed, the only feasible way for owners of the landlocked lots to access the beach easement was for them to cross a portion of Lot 5.

¶ 11    Sometime after the Findlays acquired Lot 5 in March 2007, they objected to subdivision residents crossing their lot to access the beach easement. A dispute arose between the Findlays and the Katsoyannises and Alexanders concerning access to the beach easement.

¶ 12    On May 14, 2009, the Katsoyannises submitted a claim to CTIC for an ingress-egress easement (yard easement) across Lot 5. Like the Findlays, the Katsoyannises obtained title insurance on their lot through CTIC or an affiliate. On September 21, 2009, the Alexanders, who also obtained title insurance through CTIC, submitted a claim similar to the Katsoyannises' claim.

The title company retained attorney James A. Larson of Larson & Associates, P.C., to prosecute the easement claims on behalf of the Katsoyannises and Alexanders.

¶ 13 On June 16, 2010, the Katsoyannises and Alexanders (plaintiffs) filed a declaratory judgment action in the chancery division of the circuit court against the Findlays. The plaintiffs sought a declaration regarding the existence and scope of the yard easement over Lot 5 to access the beach easement. According to the plaintiffs, the prior owners of Lot 5 knowingly allowed property owners within the subdivision to use the yard easement to access the beach easement.

¶ 14 In count I of their chancery complaint, plaintiffs alleged that they possessed a yard easement over Lot 5 to access the beach easement. In addition, and in the alternative, the plaintiffs sought declarations that they possessed the right to use the yard easement by implication (count II) and by prescription (count III). Count IV sought to permanently enjoin the Findlays from interfering with the use and enjoyment of any easements imposed or declared by the trial court. Plaintiffs alleged that after the Findlays acquired title to Lot 5, they erected a wooden fence blocking access to the beach easement; constructed a wooden boat rack on the beach easement; planted vegetation limiting the beach area available for use by the plaintiffs; permitted large, unleashed dogs to freely roam Lot 5, thereby intimidating individuals seeking to utilize the beach easement; and verbally accosted individuals attempting to cross Lot 5 to access the beach easement.

¶ 15 After being served with the chancery complaint, the Findlays retained attorney David A. Kaufman to tender defense of the lawsuit to CTIC. The title insurer subsequently consented to Kaufman appearing on behalf of the Findlays.

¶ 16 Following a coverage analysis, CTIC agreed to defend and indemnify the Findlays with respect to Counts II and III. However, CTIC denied coverage as to count I on the grounds that the

allegations in the count fell within an exception in the title insurance policy and denied coverage as to count IV on the grounds that the allegations in that count fell within two exclusions in the title insurance policy.

¶ 17    Mr. Findlay subsequently sent a letter to CTIC disputing the denial of coverage and requested a reconsideration of that decision. Among other things, Mr. Findlay expressed concern that CTIC was operating under a conflict of interest by providing counsel to plaintiffs with adverse interests in the same litigation. In denying the request to reconsider, the company responded that it was merely fulfilling its contractual obligations under the insureds' respective policies by retaining separate counsel to represent each of them in the chancery action. CTIC asserted that the counsels' competing arguments did not necessarily represent positions held by or endorsed by the company, but rather reflected the interests of the insureds.

¶ 18    On August 30, 2010, attorneys Mark Hellner and Genevieve M. Bernal of Fidelity National Law Group (FNLG), replaced Kaufman as counsel for the Findlays. CTIC agreed to partially reimburse the Findlays for the attorney fees previously paid by them to Kaufman.

¶ 19    On September 23, 2010, the Findlays filed an answer to the chancery complaint, including affirmative defenses and a counterclaim to quiet title. The counterclaim sought to (1) limit the beach easement to the 15-foot area located on the southern portion of the beach extending from the toe of the bluff to Lake Michigan's water line, (2) limit the beach easement to owners and future owners of Lot 8, (3) find that the owners and future owners of Lot 9 do not have entitlement to the beach easement, and (4) find that the owners and future owners of Lots 8 and 9 do not have a yard easement over Lot 5. The parties eventually filed cross-motions for summary judgment.

¶ 20    On July 5, 2012, following a hearing, the trial court entered an order granting in part and denying in part the parties' cross-motions for summary judgment. As to count I, the court found

5

in favor of the Findlays, ruling that plaintiffs did not possess a yard easement across Lot 5 to access the beach easement, However, the court found that the Alexanders were entitled to use the beach easement.

¶ 21    Regarding count II, the trial court found there were issues of fact as to whether the plaintiffs had an implied yard easement by necessity across Lot 5. Specifically, the court found there were issues of fact as to whether the beach easement was accessible via Oak Street and therefore denied the cross-motions for summary judgment as to this count.

¶ 22    The trial court found in favor of the Findlays as to count III, finding that the plaintiffs failed to establish several elements necessary to support a prescriptive yard easement. The court determined that the plaintiffs failed to show that the former owners of Lots 8 and 9 continuously and uninterruptedly used the purported yard easement for a period of 20 years.

¶ 23    With respect to count IV, the trial court found in favor of the Findlays, holding that vegetation on the beach easement did not constitute a material obstruction. However, the court found that the wooden boat rack the Findlays constructed on the beach easement was a material obstruction and ordered its removal.

¶ 24    After the summary judgment rulings, the Findlays contacted Bernal's supervising attorney and complained that, during the hearing, they observed Bernal exhibit behavior that they claimed showed her lack of litigation experience. They stated that they observed Bernal fidget, tug at her skirt, and reply to the trial judge with one-word answers. The Findlays requested that Bernal be replaced with Hellner, whose employment with FNLG had ended earlier in 2012. In response, Bernal's supervising attorney assigned another attorney to assist Bernal.

¶ 25    Shortly thereafter, the Findlays retained attorney Paul Bullard to represent them, alongside Bernal. Bullard was hired without prior consent or authorization from CTIC.

6

¶ 26    Bullard filed a second motion for summary judgment as to count II of the complaint. In the motion, he argued that the plaintiffs had an action for damages against the Village of Winnetka under the taking clauses of the federal and Illinois Constitutions (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 15). Bullard argued that the village's erection of the gate at the intersection of Cherry Street and Sheridan Road constituted a regulatory taking in violation of the taking clauses. He contended that this provided the plaintiffs with an adequate remedy at law, precluding equitable relief. Bullard also argued that no implied easement by necessity existed at the time of severance.

¶ 27    The trial court found the regulatory-taking argument too speculative. The court determined that at that stage of the litigation, requiring the plaintiffs to file a new action for a legal remedy against the Village of Winnetka under a speculative theory of recovery would "significantly prolong the administration of justice." In addition, the court determined there were disputed issues of material fact as to whether Cherry Street provided public access to the beach easement or whether it was a utility easement not intended for public use. Following these rulings, the trial judge presiding over the case retired. Bullard subsequently filed a third motion for summary judgment, which the new trial judge also denied.

¶ 28    After proceeding to trial on count II, implied yard easement by necessity, Bernal successfully moved for a directed finding. Both sides appealed. The plaintiffs appealed the trial court's directed finding of count II, and the Findlays cross-appealed from the finding that the Alexanders were entitled to use the beach easement and the denial of their petition for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013).

¶ 29    On March 16, 2016, a panel of this court, in affirming the trial court, found that: "(1) no implied easement by necessity for ingress to and egress from Lot 5 exists; (2) the owners of Lot 9 (the Alexanders) have the right to use the beach easement; and (3) no Rule 137 sanctions were

7

warranted." *Katsoyannis*, 2016 IL App (1st) 150036, ¶¶ 2-3, 59. The Findlays' petition for rehearing was denied and our supreme court denied their petition for leave to appeal concerning the denial of Rule 137 sanctions.

¶ 30                                   B. *Findlay v. CTIC* (Law Action)

¶ 31    On June 7, 2018, the Findlays filed a six-count *pro se* complaint in the law division of the circuit court against CTIC, FNLG, and Bernal, seeking a variety of damages. The law complaint included counts for breach of contract, bad-faith negligence, and legal malpractice.

¶ 32    The Findlays asserted three counts for breach of contract, all directed at CTIC. The first breach of contract count alleged that CTIC breached its contractual duty to defend when it refused to provide the Findlays with a defense to Counts I and IV of the chancery complaint. The Findlays alleged that CTIC created a conflict of interest when it failed to provide them with a defense to these two counts. They also contended that CTIC was operating under a conflict of interest by providing counsel to insureds with adverse interests. The Findlays asserted that they were entitled to reimbursement from CTIC for the attorney fees they incurred as result of having to retain independent counsel to defend against counts I and IV of the chancery complaint. They also claimed they were entitled to reimbursement as a result of CTIC's failure to provide them with competent in-house counsel.

¶ 33    The second breach of contract count alleged that CTIC breached the title commitment and title insurance policy by failing to give notice of an existing grant of easement benefiting Lots 9 and 10. The Findlays argued that this failure deprived them of the ability to use their knowledge of this encumbrance as a bargaining tool at closing.

¶ 34    In the third breach of contract count, the Findlays alleged that CTIC breached its contractual obligations to diligently prosecute their counterclaim to quiet title.

8

¶ 35   In count IV, the Findlays argued that CTIC committed fraud by continuing to represent them without disclosing that it was operating under a conflict of interest in the chancery action by providing counsel to insureds with adverse interests in the same action. Count V alleged that CTIC acted negligently and breached its duty to defend by providing a less than vigorous effort to remove the cloud on their title created by the beach easement. They maintained that this negligence was compounded by the failure to diligently prosecute their counterclaim to quiet title. The Findlays asserted they were damaged by CTIC's negligence "and forced to retain their own independent counsel in order to salvage their defense." Count VI claimed legal malpractice against CTIC, FNLG, and Bernal.

¶ 36   On July 26, 2018, CTIC filed a combined motion to dismiss counts II, III, V, and VI of the complaint pursuant to sections 2-615, 2-619, and 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615, 2-619, 2-619.1 (West 2018)). In the same motion, CTIC also moved to dismiss paragraphs 70 through 74 in count I pursuant to section 2-615.

¶ 37   Paragraphs 70-71 and 73-74 pertained to the Findlays' claim for full reimbursement of pre-coverage legal expenses. In subpart (a) of paragraph 72 in count I, the Findlays alleged that "[u]nder Illinois law, CTIC's acceptance of a single count in defense of a [sic] alleged complaint requires coverage of all counts alleged against the Plaintiffs, as defendant."

¶ 38   On November 20, 2018, the trial court entered an amended order making the following rulings: (1) subpart (a) of paragraph 72 in count I for breach of contract was dismissed without prejudice; the motion to dismiss was otherwise denied for the remainder of count I; (2) count II, which alleged that CTIC breached the title commitment and title insurance policy by failing to give notice of an existing grant of easement benefiting Lots 9 and 10, was dismissed without

prejudice;[2] (3) the motion to dismiss count III, which alleged that CTIC breached its contractual obligations to diligently prosecute the counterclaim to quiet title in the chancery action, was taken under advisement, subject to a separate briefing order; (4) count V, which alleged that CTIC acted negligently and breached its duty to defend by providing a less than vigorous effort to remove the cloud on title created by the beach easement, was dismissed with prejudice pursuant to the *Moorman* doctrine, as articulated in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982);[3] and (5) count VI, which alleged legal malpractice against CTIC, Bernal, and FNLG, was dismissed with prejudice pursuant to section 2-619 of the Code based on the statute of limitations.

¶ 39    On February 28, 2019, the trial court dismissed count III with prejudice, pursuant to section 2-619(a)(5), based on its finding that the allegations in the count were time-barred by the two-year statute of limitations as set forth in section 13-214.3(b) of the Code (735 ILCS 5/13-214.3(b) (West 2018)) governing claims for legal malpractice.

¶ 40    On June 30, 2021, the trial court entered a final order granting summary judgment in favor of CTIC and dismissed the remaining counts I and IV with prejudice.

¶ 41    With respect to the breach of contract claim in count I, the trial court found that the Findlays were not entitled to reimbursement for legal fees they incurred by retaining independent counsel to defend against Counts I and IV of the chancery complaint. This finding was based on the trial court's determination that the Findlays failed to present evidence that they complied with Condition 5(a) of the Policy. This condition provides in relevant part that CTIC has the right to select counsel of its choice to represent its insured, subject to the right of the insured to object for

---

[2]The Findlays did not replead count II.
[3]"The *Moorman* doctrine precludes economic damages in tort cases based on negligence." *Regas v. Associated Radiologists, Ltd.*, 230 Ill. App. 3d 959, 967 (1992).

reasonable cause; otherwise, CTIC is not liable to pay the fees of any other counsel. The court found that the Findlays failed to present any evidence that they provided CTIC with reasonable cause for the retention of independent counsel at CTIC's expense.

¶ 42    In count IV, the Findlays alleged that CTIC committed fraud by continuing to provide them with representation in the chancery action without disclosing that it was operating under a conflict of interest by providing counsel to insureds with adverse interests in the same action. The trial court found there was no evidence that CTIC misrepresented any material facts to the Findlays. In addition, the court determined that the claim in this count for fraudulent misrepresentation, was time-barred by the five-year statute of limitations applicable to fraud claims. 735 ILCS 5/13-205 (West 2018). The court concluded its order with the following language: "All other Counts of the Complaint having been previously dismissed this cause is dismissed in its entirety."

¶ 43    The Findlays filed their *pro se* notice of appeal on July 30, 2021, timely appealing from the June 30, 2021, judgment and orders entered prior thereto. Accordingly, we have jurisdiction to consider the matters raised in this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017).

¶ 44                                    II. ANALYSIS

¶ 45    The Findlays' initial arguments are directed at the construction of their title insurance policy and focus on the trial court's grant of summary judgment in favor of CTIC on counts I and IV of the law complaint. Summary judgment should be granted if the pleadings, depositions, admissions on file, and affidavits, if any, show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2018); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "The construction of an insurance policy and the determination of contractual rights involve questions

of law that are properly addressed in a summary judgment procedure." *Founders Insurance Co. v. Walker*, 2015 IL App (1st) 141301, ¶ 22. A trial court's grant of summary judgment and the construction of an insurance policy are both reviewed *de novo*. *Id.*

¶ 46    "Contracts of insurance are subject to the same rules of construction applicable to other types of contracts." *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 370 (1988). "In construing an insurance policy, the primary function of the court is to ascertain and enforce the intentions of the parties as expressed in the agreement." *Bohner v. Ace American Insurance Co.*, 359 Ill. App. 3d 621, 623 (2005).

> "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 391 (1993).

"If the terms of the policy are clear and unambiguous, they must be given their plain and ordinary meaning." *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479 (1997).

¶ 47                                  A. Conflict of Interest

¶ 48    The Findlays contend that summary judgment with respect to the breach of contract claim in count I was improper because there is a disputed issue of material fact as to whether CTIC was operating under a conflict of interest in the chancery action by providing counsel to represent both them and their opposing neighbors in the same action. They argue that this conflict of interest triggered CTIC's contractual obligation under the title insurance policy to provide them with independent counsel, at CTIC's expense.

¶ 49    This court has recognized that "[o]ne situation in which a conflict may exist giving rise to

12

an insured's right to independent counsel paid for by the insurer is where the insurer is obligated to provide defenses to multiple insureds who have adverse interests." *Joseph T. Ryerson & Son, Inc. v. Travelers Indemnity Co. of America*, 2020 IL App (1st) 182491, ¶ 54. However, it is also well established that not every potential conflict of interest automatically triggers the right to independent counsel at the insurer's expense. See *Goldberg v. American Home Assurance Co.*, 439 N.Y.S.2d 2, 4 (App. Div. 1981) ("[n]ot every potential conflict of interest demands separate representation for each party insured under a policy"); *Nat'l Cas. Co. v. Forge Indus. Staffing Inc.*, 567 F.3d 871, 874 (7th Cir. 2009) (explaining that under Illinois law, "[a]n actual, not merely potential, conflict is required to trigger the insured's right to [independent counsel]").

¶ 50    For example, courts have determined that the mere fact that opposing parties are insured by the same insurance provider does not necessarily entitle the insured to paid-for independent counsel. It is well recognized that opposing parties are often insured by the same insurance provider. See, *e.g.*, *Dari v. Uniroyal, Inc.*, 41 Ill. App. 3d 122, 125 (1976) (both parties secured automobile liability insurance coverage with same insurance company); *McKnight v. Dennis*, 51 Ill. App. 2d 403, 404 (1964) (same). In such circumstances, courts have found that there is no conflict of interest if the opposing parties are represented by separate and independent counsel. See *Capitol Specialty Insurance Corp. v. Zhang*, No. C11-41 TSZ, 2013 WL 5467279, at *8 (W.D. Wash. Sept. 30, 2013) (no conflict of interest where adverse parties with same insurance company were represented by separate and independent counsel); *Goldberg*, 439 N.Y.S.2d at 4 (no conflict of interest where insurer provided separate and independent counsel to represent divergent interests of its mutually antagonistic insureds).

¶ 51    The record in the instance case reveals that CTIC provided the Findlays and their opposing neighbors with separate and independent counsel. There is no evidence in the record indicating or

suggesting that CTIC directed Bernal as to how to litigate the case or instructed her on what arguments to make in representing the Findlays.

¶ 52    The Findlays argue that CTIC would benefit if it could avoid having to indemnify the plaintiffs' claims in the chancery action. This argument ignores the fact that CTIC would also benefit if it could avoid having to indemnify the Findlays' claims as well. In other words, no matter which party prevailed, the possibility existed that CTIC might be required to indemnify the opposing party. Therefore, CTIC had no incentive to favor one insured over another. In sum, we find that CTIC was not operating under a conflict of interest requiring appointment of independent counsel at CTIC's expense. We find there are no disputed issues of material fact concerning this matter.

¶ 53                                B. Complete Defense Rule

¶ 54    The Findlays next argue that summary judgment was improper because there are genuine issues of material fact in dispute as to whether CTIC breached its contractual duty to defend when it refused to provide them with coverage and a defense to counts I and IV of the chancery complaint. They argue that this refusal constituted a breach of CTIC's duty to provide a defense. The Findlays seek damages in the amount of attorney fees they incurred in hiring counsel to defend them against these two counts. They also seek full reimbursement for the pre-defense legal expenses they incurred before their tender of defense was evaluated by CTIC.

¶ 55    Initially, we note that there is some dispute as to whether the Findlays' arguments relate to the complete defense rule. The complete defense rule, also referred to as the "in for one, in for all rule," generally imposes an obligation on an insurer "to provide a complete defense in a suit or action against its insured even if only one or some of the claims are potentially covered." *Philadelphia Indemnity Insurance Co. v. Chicago Title Insurance Co.*, 771 F.3d 391, 398 (7th Cir.

14

2014). In their reply brief, the Findlays suggest that this issue became moot when the trial court dismissed subpart (a) of paragraph 72 in count I of their law complaint, which they contend concerned application of the complete defense rule.

¶ 56    We disagree that this issue is moot. "An issue is moot where there remains no live controversy between the parties." *Chicorp, Inc. v. Bower*, 336 Ill. App. 3d 132, 137 (2002). Here, there remains an active controversy as to whether the complete defense rule applies in the context of title insurance. We note that although the Findlays avoid using the phrase "the complete defense rule," the phrase aptly describes the nature of their arguments. Therefore, we will review this issue.

¶ 57    In support of their contention that CTIC breached its duty to defend by refusing to provide a defense to counts I and IV, the Findlays rely on Illinois case law holding that

> " '[w]hen a complaint against the insured alleges facts within or potentially within the scope of the policy coverage, the insurer taking the position that the complaint is not covered by the policy must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage.' " *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 371 (1999) (quoting *Clemmons v. Travelers Insurance Co.*, 88 Ill. 2d 469, 475 (1981)).

This type of broad defense language found in general liability insurance policies triggers the complete defense rule. See *Owners Insurance Co. v. Hagen*, No. 14-cv-1017-MJR-DGW, 2015 WL 11539509, at *2 (S.D. Ill. Oct. 27, 2015).

¶ 58    One rationale courts have used to justify the complete defense rule is that "dividing representation between covered and noncovered claims is impractical." *GMAC Mortgage, LLC v. First American Title Insurance Co.*, 985 N.E.2d 823, 828 (Mass. 2013). In discussing this rationale, the United States District Court for the District Court of Columbia stated in part as

15

follows:

> "Where a lawsuit containing both covered and noncovered claims is filed against an insured, it is often not feasible to differentiate between legal work performed in connection with the defense of covered claims and work connected with noncovered claims. Instead, it is simply easier to view the lawsuit against the insured as an 'organic whole' and require the insurer to defend the entire suit. *** However, there are some circumstances where this rationale does not apply. For example, when costs may practicably be apportioned between covered and noncovered claims, there is no compelling reason to require the insurance company to assume the costs of defending the noncovered claims." *Armada de la Republica Argentina v. Yorkington Limited Partnership*, No. 92-0285 (RCL), 1995 WL 46394, at *16 (D.D.C. Jan. 27, 1995).

¶ 59    In recent years, an increasing number of courts have determined that the rationale behind the complete defense rule does not apply in the context of title insurance. See, *e.g.*, *Badger Mining Corp. v. First American Title Insurance Co.*, 534 F. Supp. 3d 1011 (W.D. Wis. 2021) (applying Wisconsin law); *Cherry Hills Farm Court, LLC v. First American Title Insurance Co.*, 428 F. Supp. 3d 516 (D. Colo. 2019) (applying Colorado law); *Lupu v. Loan City, LLC*, 903 F.3d 382 (3d Cir. 2018) (applying Pennsylvania law); *GMAC Mortgage, LLC.*, 985 N.E.2d 823 (applying Massachusetts law); see also Gerald W. Heller, *Title Insurers' Evolving Duty to Defend?*, 48 Md. B.J. 40 (Sept./Oct. 2015).

¶ 60    The reasons given for such a determination focus on the differences between general liability insurance and title insurance. The Seventh Circuit Court of Appeals, applying Illinois law, has noted that title insurance is unique in the insurance world and differs from other forms of property and liability insurance in that it only indemnifies and covers losses from defects in title,

lien property, encumbrances, and other similar risks. *BB Syndication Services, Inc. v. First American Title Insurance Co.*, 780 F.3d 825, 827 (7th Cir. 2015); *Philadelphia Indemnity*, 771 F.3d at 399. Title insurance generally requires only a one-time premium for indefinite coverage for as long as the insured holds title, while general liability insurance requires continuing, periodic payments over a fixed term of coverage. *Philadelphia Indemnity*, 771 F.3d at 400.

¶ 61    "[T]itle insurance is retrospective rather than prospective; it generally protects against defects in title that arose *prior to* the issuance of the policy, allowing the insurer to reduce or eliminate risk by conducting a careful title search to identity defects." (Emphasis in original.) *BB Syndication Services, Inc.*, 780 F.3d at 827; see also *Philadelphia Indemnity*, 771 F.3d at 399-400 (noting that title insurance is aimed at risks in existence on the date the policy is issued rather future risks). Title policies typically describe their defense obligations in terms of defending a particular cause of action, rather than in terms of defending "suits" or "actions," as is typical for general liability policies. *Philadelphia Indemnity*, 771 F.3d at 400. In addition, "title-related claims are 'discrete' and can be 'bifurcated fairly easily from related claims.' " *Id*. (quoting *GMAC Mortgage*, 985 N.E.2d at 829).

¶ 62    The Findlays cite to *Perry v. Fidelity National Title Insurance Co.*, 2015 IL App (2d) 150168, in support of their contention that title insurance companies should be treated the same as general liability insurance companies in determining an insurer's defense obligation. In *Perry*, the second district appellate court applied the duty-to-defend test applicable to general liability insurance companies to determine the scope of the title insurer's duty to defend its insured. *Id.* ¶¶ 12-13. However, the *Perry* court did not address the specific issue of whether the complete defense rule should apply in the context of title insurance. To the extent that the holding in *Perry* can be interpreted as finding that the complete defense rule applies in the context of title insurance,

17

we disagree with such an interpretation.

¶ 63    We recognize that this court is not bound by the decisions of the federal district court and court of appeals interpreting state law. *Channon v. Westward Management, Inc.*, 2021 IL App (1st) 210176, ¶ 19. However, we may look to federal decisions for guidance and adopt their reasoning if we find it persuasive. *Mokena Community Park District v. Romanek*, 2020 IL App (3d) 180336, ¶ 13; *Bergman v. Water Reclamation District of Greater Chicago*, 274 Ill. App. 3d 686, 689 (1995).

¶ 64    Here, we find the reasoning of the Seventh Circuit Court of Appeals in *Philadelphia Indemnity* and *BB Syndication Services, Inc.*, to be persuasive on the issue of whether the complete defense rule applies in the context of title insurance. Therefore, we adopt that reasoning as our own. Accordingly, we hold that the complete defense rule does not apply in the context of title insurance.

¶ 65                    C. Reasonable Cause Under Section 5(a) of the Title Policy

¶ 66    Section 5(a) of the title policy provides, in relevant part, that the title company has "the right to select counsel of its choice (subject to the right of the Insured *to object for reasonable cause*) [and that the company] shall not be liable for and will not pay the fees of any other counsel." (Emphasis added.)

¶ 67    Here, the trial court found that the Findlays failed to present any evidence that they provided CTIC with "reasonable cause" under section 5(a) to request the retention of independent counsel at CTIC's expense. Based on this finding, the court granted summary judgment on count I in favor of CTIC on the Findlays' first breach of contract claim in their law complaint. As earlier noted, this claim requested reimbursement for attorney fees the Findlays incurred as a result of retaining independent counsel to defend against counts I and IV in the chancery action.

18

¶ 68    The Findlays contend that summary judgment was improper. They argue that there are genuine issues of material fact in dispute as to whether their objections to Bernal's continued representation of them constituted "reasonable cause" under section 5(a).

¶ 69    An insurer's duty to defend its insured usually includes the right to select an attorney to represent the insured and to control the defense as provided for in the policy. See *Joseph T. Ryerson & Son, Inc.*, 2020 IL App (1st) 182491, ¶ 53; *Xtreme Protection Services, LLC v. Steadfast Insurance Co.*, 2019 IL App (1st) 181501, ¶ 19. "A limited exception to this rule exists where a conflict of interest arises between the insurer and insured. [Citation.] Where a conflict exists, the insured, rather than the insurer, is entitled to assume control of the defense of the underlying action. [Citation.]" *Joseph T. Ryerson & Son, Inc.*, 2020 IL App (1st) 182491, ¶ 53. An insurer may cede control of the defense when there is a conflict of interests that entitles the insured to control the defense through counsel of its own choosing. *Central Mutual Insurance Co. v. Tracy's Treasures, Inc.*, 2014 IL App (1st) 123339, ¶ 44. "If this occurs, the insurer satisfies its obligation to defend by reimbursing the insured for the cost of defense provided by independent counsel selected by the insured." *Joseph T. Ryerson & Son, Inc.*, 2020 IL App (1st) 182491, ¶ 53.

¶ 70    The Findlays cite no authority recognizing a conflict of interest under facts similar to those in this case, where a title insurer provides separate and independent counsel to represent the divergent interests of its insureds. Instead, the Findlays contend that their perceptions of Bernal during the hearing on the cross-motions for summary judgment—where they observed her fidget, tug at her skirt, and reply to the trial judge with one-word answers—constituted "reasonable cause" under section 5(a) to retain independent counsel at CTIC's expense.

¶ 71    CTIC counters, and the trial court agreed, that the Findlays' lay observations and perceptions about Bernal's legal skills are not sufficient to establish that her representation fell

19

below the standard of care which would constitute "reasonable cause" under section 5(a) of the title policy. We find that CTIC and the trial court have the more persuasive argument on this issue.

¶ 72 Our examination of the record fails to disclose any evidence that would lead a reasonable lay person to conclude that Bernal failed to meet the requisite standard of care. Bernal succeeded in defending the Findlays against all claims brought against them in the chancery action, except for two: (1) the trial court determined, and the appellate court affirmed, that the owners of Lot 9 (the Alexanders) had the right to use the beach easement and (2) the trial court found that a wooden boat rack the Findlays constructed on the beach easement was a material obstruction and ordered its removal. Therefore, we hold that the trial court did not err in finding that no reasonable cause existed under section 5(a) requiring CTIC to allow the Findlays to retain independent counsel at CTIC's expense. We conclude there are no disputed issues of material fact concerning this matter.

¶ 73 In sum, we find that the trial court did not err in granting summary judgment in favor of CTIC on the breach of contract claims in count I of the Findlays' law complaint. As a result, we find that the Findlays are not entitled to reimbursement of the attorney fees they incurred as a result of retaining independent counsel to defend against counts I and IV in the chancery action. We also find that the Findlays are not entitled to full reimbursement of the pre-defense legal expenses they incurred prior to their tender of defense.

¶ 74 Before we leave the issue of reimbursement of pre-defense legal expenses, we note that the Findlays maintain that the trial court made a "math error" in calculating the amount of the reimbursement. However, the Findlays failed to raise this argument before the trial court. Therefore, it cannot be raised for the first time on appeal. See, *e.g.*, *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 ("arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal").

¶ 75                    D. Fraud Claim in Count IV of the Law Complaint

¶ 76    In count IV, the Findlays alleged that CTIC committed fraud by continuing to provide them with representation in the chancery action without disclosing that it was operating under a conflict of interest by providing counsel to insureds with adverse interests in the same action. The Findlays allege that they were damaged in that the conflict of interest required them to retain and pay for independent counsel.

¶ 77    The trial court granted summary judgment in favor of CTIC, finding that there was no evidence that the title insurance company misrepresented any material facts to the Findlays. In addition, the court determined that the claim was time-barred by the five-year statute of limitations applicable to fraud claims. 735 ILCS 5/13-205 (West 2018). We find no error in either ruling.

¶ 78                              1. Fraudulent Misrepresentation

¶ 79    To sufficiently plead a cause of action for fraudulent misrepresentation, a plaintiff must allege and prove the following elements: (1) a false statement of material fact, (2) defendant's knowledge or belief that the statement was false, (3) defendant's intent that the statement induce the plaintiff to act, (4) plaintiff's justifiable reliance upon the truth of the statement, and (5) plaintiff's damages resulting from reliance on the statement. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 193 (1989). These elements must be pled with particularity, specificity, and certainty. *Ault v. C.C. Services, Inc.*, 232 Ill. App. 3d 269, 271 (1992).

¶ 80    A plaintiff has the burden of proving each element of fraud by clear and convincing evidence. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 191-92 (2005). "If the plaintiff fails to establish any element of the cause of action, summary judgment for the defendant is proper." *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007).

¶ 81    Generally, a trial court's decision as to whether plaintiff has satisfied their burden will not

be disturbed unless it is against the manifest weight of the evidence. *Newton v. Aitken*, 260 Ill. App. 3d 717, 721 (1994). This is so because whether the plaintiff has proven those elements usually constitutes a question of fact. *Id.* However, the question of whether a plaintiff's reliance was justifiable can become a question of law where only one conclusion can be drawn from the undisputed facts. *Siegel Development, LLC v. Peak Construction LLC*, 2013 IL App (1st) 111973, ¶ 114.

¶ 82    Based upon the undisputed facts in this case, we find that, as a matter of law, the Findlays failed to establish at least two elements of their fraud claim—namely, the first element (a false statement of material fact) and the fourth element (justifiable reliance). See, *e.g.*, *Avon Hardware Co. v. Ace Hardware Corp.*, 2013 IL App (1st) 130750, ¶ 11 (finding that, as a matter of law, plaintiffs' fraud claims failed to establish these two elements).

¶ 83                              a. False Statement of Material Fact

¶ 84    In regard to the first element, the Findlays contend that, in its letter of November 18, 2010, CTIC misrepresented the fact that it was not operating under a conflict of interest. A review of the letter reveals no such misrepresentation.

¶ 85    In the letter, Bernal informed the Findlays that FNLG had been appointed to represent them in the chancery action. Bernal stated that she would be the primary attorney and would be assisted by Hellner. Bernal added that she and Hellner's "primary duty of loyalty" was to the Findlays and that the "common goal" was to succeed in "defending and resolving the lawsuit." Bernal further added that there appeared to be no conflict of interest between FNLG and the Findlays, but if a conflict did arise, she would bring it to the attention of the Findlays, so they could decide how to proceed. This letter does not evince any misrepresentations concerning a conflict of interest.

¶ 86    The Findlays also contend that CTIC misrepresented the fact that it was not operating under

a conflict of interest by providing counsel to both them and the plaintiffs in the chancery action. The record does not support this contention.

¶ 87    The record shows that prior to the Findlays answering the chancery complaint in September 2010, CTIC informed the Findlays in August 2010 that it had issued title policies to both plaintiffs. CTIC also informed the Findlays that it had retained Larson to represent the plaintiffs. In addition, James Findlay, in his August 2010 letter to CTIC, acknowledged this fact when he requested the title insurer to reconsider its denial of coverage as to counts I and IV. Thus, the undisputed evidence shows that CTIC disclosed the very information the Findlays rely on as a misrepresentation. The Findlays failed to present any evidence that CTIC misrepresented or omitted a material fact, so as to support the first element of their claim for fraudulent misrepresentation.

¶ 88    For these same reasons, we find that the Findlays cannot establish the element of justifiable reliance on the alleged misrepresentations of CTIC.

¶ 89                                    b. Justifiable Reliance

¶ 90    "As part of its fraud claim, a plaintiff must show that its reliance on the misrepresentation was justified." *Pack v. Maslikiewicz*, 2019 IL App (1st) 182447, ¶ 105. "In determining whether reliance was justifiable, all of the facts that the plaintiff knew, as well as those facts the plaintiff could have learned through the exercise of ordinary prudence, are taken into account." *Barille v. Sears Roebuck & Co.*, 289 Ill. App. 3d 171, 177 (1997).

¶ 91    In the instant case, the undisputed evidence shows that the information the Findlays claim was misrepresented or not disclosed to them was, in fact, disclosed in the chancery action. Therefore, there were no misrepresentations or omissions of material fact upon which the Findlays could justifiably rely to support their claim for fraudulent misrepresentation. In other words, the

23

element of justifiable reliance is absent.

¶ 92   In sum, the Findlays failed to establish the elements necessary to state a *prima facie* claim of fraudulent misrepresentation. Accordingly, we find that the trial court did not err in granting summary judgment in favor of CTIC on the issue of fraud.

¶ 93                              2. Statute of Limitations

¶ 94   Moreover, the undisputed evidence also establishes that the trial court did not err in concluding that the Findlays' fraud claim was time-barred by the five-year statute of limitations found in section 13-205 of the Code (735 ILCS 5/13-205 (West 2018)). Fraud claims are subject to the five-year limitations period set forth in section 13-205 of the Code. *Doe v. Diocese of Dallas*, 234 Ill. 2d 393, 413 (2009). This section of the Code provides that "all civil actions not otherwise provided for, shall be commenced within 5 years next after the cause of action accrued." 735 ILCS 5/13-205 (West 2018).

¶ 95   The Findlays contend there is nothing in the record showing that they knew or should have known that CTIC was operating under a conflict of interest by providing counsel to insureds with adverse interests in the same action, prior to June 2013, which is five years prior to the filing of the law complaint. The Findlays argue that they first became aware of such conflict in February 2016, when they discovered "the full extent of CTIC's retaining of the Larson Firm." The record does not support these arguments.

¶ 96   As mentioned, in August 2010, the Findlays were aware of the facts they relied upon to support their contention that CTIC was operating under a conflict of interest and committing fraud by failing to disclose that it was providing counsel to both them and plaintiffs. Under the five-year statute of limitations set forth in section 13-205 of the Code, the Findlays were required to file their fraud claim by August 2015. However, they failed to file their claim until June 2018, nearly

24

three years after the expiration of the five-year limitations period provided for in section 13-205. Therefore, we find that the trial court properly held that the Findlays' fraud claim in count IV of their law complaint was time-barred.

¶ 97                                    E. Count III of the Law Complaint

¶ 98    In count III, the Findlays alleged that CTIC breached its contractual obligations by failing to diligently prosecute the Findlays' counterclaim to quiet title. CTIC countered that although the Findlays labeled count III as a cause of action for breach of contract, the count actually pleaded a cause of action for legal malpractice. CTIC argued that, therefore, the count was subject to the two-year statute of limitations for legal malpractice, rather than the 10-year statute of limitations for breach of written contracts.

¶ 99    The trial court agreed and dismissed count III pursuant to section 2-619(a)(5) of the Code. The court concluded that the allegations in the count were time-barred by the two-year statute of limitations as set forth in section 13-214.3(b) of the Code, governing claims for legal malpractice. 735 ILCS 5/13-214.3(b) (West 2018). Whether a cause of action was properly dismissed under section 2-619(a)(5), based on the statute of limitations, is a matter we review *de novo*. *Ferguson v. City of Chicago*, 213 Ill. 2d 94, 99 (2004).

¶ 100   Allegations of a complaint define a cause of action rather than the label assigned it by the plaintiff. *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill. App. 3d 795, 799 (2005). In defining a cause of action, courts "must examine the specific factual allegations in plaintiff's complaint rather than the title placed on each individual count." *Childs v. Pinnacle Health Care, LLC*, 399 Ill. App. 3d 167, 181 (2010). "[W]hen analyzing a party's request for relief, courts should look to what the pleading contains, not what it is called." *In re Haley D.*, 2011 IL 110886, ¶ 67.

¶ 101   The Findlays labeled count III as a cause of action sounding in breach of contract.

25

However, the factual allegations in that count belie the label. The Findlays alleged that CTIC failed to diligently prosecute the counterclaim by failing to argue that language in the deed conveying Lot 5 was ambiguous. The Findlays went on to argue that the conveyance language was ambiguous because although it indicated that La Salle Bank intended to reserve its ability to grant a beach easement to benefit Lots 8, 9, and 10, the bank's subsequent actions showed that the reservation was never exercised.[4] The Findlays contended that CTIC should have addressed this ambiguity and that its failure to do so amounted to a failure to diligently prosecute the counterclaim. The Findlays further contended that CTIC failed to argue that the Alexanders had the burden of proving they possessed an easement and failed to dispute Larson's alleged erroneous citations and facts.

¶ 102 These arguments, which the Findlays claimed CTIC failed to make, all relate to the manner in which Bernal prosecuted the counterclaim. Each act or omission alleged in count III involved Bernal's conduct in prosecuting the counterclaim. Therefore, it follows that these acts or omissions sounded in legal malpractice, rather than breach of contract. See, *e.g.*, *Border Demolition & Environmental, Inc. v. Pineda*, 535 S.W.3d 140, 161-62 (Tex. App. 2017) (finding that, when a plaintiff's factual allegations center solely on an attorney's purported failure to meet the requisite standard of care, those allegations support a claim for legal malpractice and plaintiff may not recast the claim into a claim for breach of contract); *Alexandru v. Strong*, 837 A.2d 875, 882-83 (Conn. App. Ct. 2004) (pleading was a legal malpractice claim cloaked in contractual language, where plaintiff alleged that defendant breached his contractual duties by failing to file negligent infliction of emotional distress action within applicable limitations period). Accordingly, we find that the trial court correctly determined that the allegations in count III sounded in legal malpractice, rather than breach of contract.

---

[4]Notably, a similar argument was considered and rejected by the reviewing court in *Katsoyannis*, 2016 IL App (1st) 150036, ¶¶ 43-46.

¶ 103    Next, we consider whether the trial court correctly found that count III was subject to the two-year statute of limitations for legal malpractice actions as set forth in section 13-214.3(b). This section provides in relevant part that

> "[a]n action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services *** must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." 735 ILCS 5/13-214.3(b) (West 2014).

A plain reading of the statute shows that it applies to attorneys.

¶ 104    Therefore, for us to find that the statute applies to CTIC, a non-attorney, we must first determine whether Bernal was acting as CTIC's agent when she represented the Findlays in the chancery action. We believe that Bernal was acting in such capacity.

¶ 105    The Findlays' count III claims against CTIC are premised on a theory of *respondeat superior*. Under the doctrine of *respondeat superior*, a principal may be held liable for the tortious conduct of its agent, even if the principal does not engage in the tortious conduct. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 46. When an insurer provides counsel to defend its insured and assumes control of the defense, as provided in the policy, a principal-agent relationship exists between the insurer and counsel. See *Smoot v. State Farm Mutual Automobile Insurance Co.*, 299 F.2d 525, 530 (5th Cir. 1962) ("[t]hose whom the Insurer selects to execute its promises, whether attorneys, physicians, no less than company-employed adjusters, are its agents for whom it has the customary legal liability"); see also *Blakely v. American Employers' Insurance Co.*, 424 F.2d 728, 734 (5th Cir. 1970) (citing *Smoot* on this issue).

27

¶ 106   Here, CTIC appointed Bernal to defend the Findlays against the claims brought against them by the plaintiffs in the chancery action. "Where the insurer has a duty to defend, that duty includes the right to assume control of the litigation." *Preferred American Ins. v. Dulceak*, 302 Ill. App. 3d 990, 995 (1999). CTIC controlled the defense. Therefore, Bernal was an agent of CTIC when she represented the Findlays.

¶ 107   In *Rodi v. Horstman*, 2015 IL App (1st) 142787, ¶ 45, the appellate court determined that "[i]n cases involving *respondeat superior*, the statute of limitations applicable to the agent also applies to the principal." Specifically, in *Rodi*, the owner of a construction company sought to hold a financial services provider and its agent, an attorney, liable for injuries suffered by the owner after the attorney served citations to discover assets that erroneously overstated the amount of outstanding debt owed to the provider. *Id.* ¶¶ 8-17. The appellate court held that the owner's claims against the provider rested on a theory of *respondeat superior*, and therefore, the two-year statute of limitations for legal malpractice actions applied to the owner's claims against the provider and its attorney. *Id.* ¶¶ 44-45.

¶ 108   The statute of limitations applicable to Bernal is the two-year limitations period for legal malpractice actions as set forth in section 13-214.3(b). Thus, applying the reasoning in *Rodi*, the two-year statute would apply to CTIC. We find that the trial court correctly determined that count III was subject to the two-year statute of limitations for legal malpractice actions set forth in section 13-214.3(b) of the Code.

¶ 109   The trial court entered its final judgment in the chancery action on December 3, 2014. The following day, the Findlays sent an e-mail to Bernal's superior, complaining about her representation. At that time, the Findlays knew or reasonably should have known that they had a cognizable claim for legal malpractice. Consequently, the Findlays' claim accrued on December

4, 2014, the two-year statute of limitations in section 13-214.3(b) began on that date, and the statute of limitations subsequently expired on December 4, 2016.

¶ 110   The Findlays' complaint was filed on June 7, 2018, beyond the two-year limitations period. Therefore, the trial court did not err in dismissing count III pursuant to section 2-619(a)(5), as the allegations in the count were time-barred by the two-year statute of limitations.

¶ 111                              F. Denial of Discovery Requests

¶ 112   The Findlays contend the trial court erred in ruling on their various discovery motions, including motions to compel and a motion to request the production of certain documents. They argue that the court allowed CTIC to "pick and choose" which interrogatories it would answer and which documents it would produce, without substantiating a single objection or entering a single privilege log entry.[5] The Findlays contend that the court essentially gave CTIC a "pass" from participating in the discovery process in violation of Illinois Supreme Court Rule 213 (eff. Jan. 1, 2018) and 214 (eff. July 1, 2018). The Findlays assert that the court's discovery rulings were prejudicial because the rulings deprived them of evidence they could have used to respond to CTIC's motion for summary judgment.

¶ 113   Trial courts are afforded considerable discretion in ruling on matters pertaining to discovery, and we will not disturb such rulings absent an abuse of that discretion. *Carlson v. Michael Best & Friedrich LLP*, 2021 IL App (1st) 191961, ¶ 75. A trial court abuses its discretion where its rulings are arbitrary, fanciful, or unreasonable, or where no reasonable person would adopt the court's view. *Id.*

¶ 114   Illinois Supreme Court Rule 201 (eff. July 1, 2014) defines the scope of pretrial discovery

---

[5]A privilege log is a discovery tool that may be used to establish a claim of privilege over certain documents or information pursuant to Illinois Supreme Court Rule 201(n) (eff. July 1, 2014); *Otto Baum Co. v. SÜD Family Ltd. Partnership*, 2020 IL App (3d) 190054, ¶ 9.

in civil cases. *Daley v. Teruel*, 2018 IL App (1st) 170891, ¶ 25; *Brown v. Advocate Health & Hospitals Corp.*, 2017 IL App (1st) 161918, ¶ 12. Rule 201(b)(1) provides, in relevant part, that a party generally "may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party." Ill. S. Ct. R. 201(b)(1) (eff. July 1, 2014). Rule 401 of the Illinois Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011). Under Rule 402 of the Illinois Rules of Evidence, all relevant evidence generally is admissible, and evidence that is not relevant is not admissible. Ill. R. Evid. 402 (eff. Jan 1, 2011).

¶ 115 "Rule 201 allows pretrial discovery of two types of information: that which is admissible at trial and that which leads to what is admissible at trial." *Manns v. Briell*, 349 Ill. App. 3d 358, 361 (2004); see also *Klaine v. Southern Illinois Hospital Services*, 2014 IL App (5th) 130356, ¶ 14 (citing to *Manns* and noting that Rule 201(b)(1) "has been interpreted to allow discovery of all information that would be admissible at trial as well as information which is reasonably likely to lead to admissible evidence"). The "concept of relevance is broader for discovery purposes than for purposes of the admission of evidence at trial, since it includes not only what is admissible at trial, but also that which leads to what is admissible." *Crnkovich v. Almeida*, 261 Ill. App. 3d 997, 999 (1994).

¶ 116 A review of the record shows that CTIC substantively answered interrogatories propounded by the Findlays and substantively responded to their production requests, except for requests which sought the following information and documents: (1) the identity of the firm that processed the plaintiffs' title claims and the name of the registered agent for the firm, (2) the dates

30

and amounts of the payments made to Larson, (3) the plaintiffs' claim files, and (4) any and all appraisals of their respective properties. CTIC objected to the disclosure of this information and documents on the grounds that they were not relevant to any disputed issue in the case and were not reasonably calculated to lead to the discovery of admissible evidence. CTIC argued that it provided the Findlays with all discovery they were entitled to receive under the rules.

¶ 117   The Findlays fail to explain, and this court is unable to discern, how the information and documents that were not disclosed to the Findlays during discovery are reasonably calculated to lead to the discovery of admissible evidence relevant to the Findlays' claims. The Findlays offer no arguments as to how the disclosure of the amounts that Larson & Associates charged to represent the plaintiffs or the disclosure of the plaintiffs' claim files and appraisals of their respective properties would have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ill. R. Evid. 401 (eff. Jan. 1, 2011).

¶ 118   "A trial court does not abuse its discretion in denying discovery of a subject not relevant to the action." *Schneiderman v. Kahalnik*, 200 Ill. App. 3d 629, 636-37 (1990). The Findlays' discovery requests sought information and documents that were not likely to lead to admissible evidence relevant to the Findlays' claims. Therefore, we find that the trial court did not abuse its discretion in sustaining CTIC's objections to the Findlays' discovery requests. For these same reasons, we find that the trial court did not abuse its discretion in striking the Findlays' second request to produce, since the request sought the same documents the trial court earlier determined were irrelevant and not discoverable.

¶ 119                                III. CONCLUSION

¶ 120   The trial court properly granted summary judgment in favor of CTIC on the breach of

31

contract claims in count I and fraud claims in count IV of the Findlays' law complaint. The trial court properly dismissed count III of the law complaint pursuant to section 2-619(a)(5) of the Code based on its finding that the allegations in the count were time-barred by the two-year statute of limitations as set forth in section 13-214.3(b) of the Code, governing claims for legal malpractice. Finally, we conclude that the trial court did not abuse its discretion in denying the Findlays' various requests for additional discovery.

¶ 121   Affirmed.

*Findlay v. Chicago Title Insurance Co.*, 2022 IL App (1st) 210889

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 18-L-005936; the Hon. Margaret A. Brennan, Judge, presiding. |
| **Attorneys for Appellant:** | James S. Findlay and Susan E. Small, both of Winnetka, appellants *pro se*. |
| **Attorneys for Appellee:** | Daniel B. Meyer, of Meyer Law Group LLC, of Chicago, for appellees. |